## Commonwealth v. Erie Dry Goods Company

*Claude T. Reno*, Attorney General, for Commonwealth.

*Hull, Leiby & Metzger*, for defendant.

HARGEST, P. J., March 11, 1946.—This case comes before us upon an appeal from the settlement, by the accounting officers, of a tax on corporate net income for the month of January 1937. A stipulation was filed to try the case without the intervention of a jury.

### Facts

The facts have been agreed upon, and we state so much of them as are necessary to the discussion.

1. Defendant, a Pennsylvania corporation, is engaged in operating a department store in Erie, Pa., and filed its capital stock, corporate loans, and corporate net income tax reports with the Department of Revenue for the calendar year 1936.

2. Defendant requested, and obtained, permission to change its taxable year from a calendar to a fiscal year basis, to begin February 1, 1937. In the letter making the request, the company asked for necessary instructions "for our capital stock, loans report, and corporate net income tax"; and the letter of the department advised the company that the capital stock and corporate loans tax reports should be filed from January 1, 1937, to January 31, 1937, on or before April 15, 1937; but made no reference to corporate net income tax reports.

3. On or about May 4, 1938, the Department of Revenue advised appellant that it should file a corporate net income tax report for the month of January 1937 and a corporate net income tax report for 12

months ending January 31, 1938, and that appellant "would be liable to file its last corporate net income tax report under the Act of April 8, 1937, P. L. 227, on 11 months' basis".

4. That on May 13, 1938, defendant filed a corporate net income tax report for the month of January 1937 and made payment, under protest, of $788.88.

5. On July 12, 1939, the Department of Revenue settled, and on July 24, 1939, the Department of the Auditor General approved, the tax for the month of January 1937 in the amount of $788.88, and imposed a penalty of $78.89 on account of the late filing of the corporate net income tax report for the month of January 1937. After refusal of the petition for resettlement and petition for review, this appeal was taken.

6. On July 13, 1939, there was a change made by the Federal Government in the net income for the month of January 1937 and defendant, on July 26, 1939, filed with the Department of Revenue a report of change increasing the tax in the amount of $73.17, which defendant also paid, making the total tax for the month $862.05. No penalty was imposed in the resettlement. The penalty for the late filing was not paid.

### Questions involved

1. Is there statutory requirement that defendant should file a report and pay corporate net income tax for the month of January 1937?

2. If the statutes make such requirement, are they unconstitutional?

3. Is defendant liable for any penalty for the late filing of the report for the month of January 1937?

### Statutes involved

The Act of May 16, 1935, P. L. 208, imposed an excise tax for a limited period on net incomes of corporations. The Corporate Net Income Tax Act of April 8, 1937, P. L. 227, reënacted and amended the Act of

1935 by continuing the tax on the net income during the calendar years 1937 and 1938, "except when a corporation reports to the Federal Government on the basis of a fiscal year, and has certified such fact to the department", in which case the tax shall be paid on the net income received during the fiscal years commencing with the calendar years 1937 and 1938.

Section 2 defines "Net Income":

"In case the entire business of the corporation is transacted within this Commonwealth, net income for the calendar year or fiscal year as returned to, and ascertained by the Federal Government, subject, however, to any correction thereof, for fraud, evasion, or error as finally ascertained by the Federal Government."

Section 4 makes it the duty of every corporation liable to pay the tax to report before April 15, 1938, and 1939, upon a form prescribed.

Section 7(a) provides that if the amount of the net income, as returned by any corporation to the Federal Government, is finally changed or corrected, the corporation, within 30 days after such filing of change or correction, shall make a corrected report to the Department of Revenue.

Section 8 provides that all taxes due under the act shall be settled so that, as far as possible, notice may reach the taxpayer before the end of a year after the tax report was required to be made; and:

"The tax imposed by this act shall be settled, resettled, and otherwise imposed and adjusted in the same manner, within the same periods of time, and right of resettlement, review, appeal, and, except as herein otherwise prescribed, refund, as provided by law in the case of capital stock and franchise taxes imposed upon corporations."

This act clearly means that the tax imposed on a calendar or a fiscal year basis must be settled as "capital stock and franchise taxes" are settled.

This corporation was on a calendar year basis until, at its own request, it got off. Upon what theory of law or equity could it escape the interim tax when it was allowed to get off?

The Corporate Net Income Tax Act of 1935 has been biennially amended and the tax continued in the same language, so far as this case is concerned to this date, the last amendment being the Corporate Net Income Tax Act of April 11, 1945, P. L. 190.

Moreover, section 702 of the Fiscal Code, as amended February 2, 1937, P. L. 3, 72 PS §702, provides:

"If any corporation or association closes its fiscal year, not upon the thirty-first day of December, but upon some other date, and reports to the United States Government as of such other date, or would so report were it required to make a return to the United States Government, such corporation or association shall certify such fact to the Department of Revenue and shall make any capital stock, *franchise,* or loans tax report or bonus report required to be made by it, or any of its officers, to the Department of Revenue, within seventy-five days after such date, subject in all other respects to the laws relating to the making of such reports and returns.

"The first report made by any corporation or association changing any return or report from the calendar to the fiscal year basis shall cover the period from the last day of the calendar year for which a return or report was filed to the first day of the fiscal year, and the Department of Revenue shall settle the tax for such intervening period at the proportionate annual rate provided by law, and also settle the bonus."

The Fiscal Code above referred to was amended February 2, 1937. The act extending this additional tax on net incomes was passed April 8, 1937. The two acts must be construed together. The word "franchise", as above italicized in section 702, was first inserted in the Act of 1937 to require "franchise tax"

reports to be made for the interim between the last day of the calendar year and the first day of the fiscal year when a change is made. Section 3 of the Corporate Net Income Tax Act imposes the tax "for the privilege of doing business". This is a "franchise tax": Turco Paint & Varnish Co. v. Kalodner et al., 320 Pa. 421; Commonwealth v. Columbia Gas & Electric Corp., 336 Pa. 209.

The legislature definitely tied in section 8(b) of the Corporate Net Income Tax Act, which mentions both capital stock and franchise taxes, with section 702 of the Fiscal Code, requiring the filing of reports for the interim between the calendar year and a newly provided fiscal year.

We think the system is complete and clearly shows a legislative intention to cover tax for the interim months where there is a change from the calendar to a fiscal year.

No substantial argument can be based upon the proposition that the interim is not covered because the Corporate Net Income Tax Act of 1935 and the amendment of 1937 did not provide for a continuing tax. Nor is anything to be predicated upon the fact that in the letter of the Department of Revenue of June 6, 1938, Exhibit D, it is stated that "the last tax imposed under the Corporate Net Income Tax Act of April 8, 1937, is to be made on an 11, instead of a 12, month basis". Since the Act of 1937 has been continued by repeated enactment up to this time, the letter of the department must be understood as continuing the time when the report is to be made on an 11, instead of a 12, month basis, to the time when this tax finally expires.

The Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551, provides in section 551:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions."

And in section 552 it is provided that the legislature does not intend a result that is absurd.

We recognize the well-settled principle that a taxing statute must be strictly construed: Commonwealth v. Repplier Coal Co., 348 Pa. 372.

While the Act of 1937 is defined as a Corporate Net Income Tax Act, and the title describes it "as imposing an excise tax", section 3 also provides that "Every corporation shall be subject to, and shall pay for the privilege of doing business in this Commonwealth, a State excise tax". So that when the legislature, in February 1937 inserted in section 702 of the Fiscal Code, relating to reports on fiscal year basis, that the corporation should make a "Franchise tax report", it indicates a clear intention to cover all reports "for the privilege of doing business in this Commonwealth", including those required by the Corporate Net Income Tax Act. The mere fact that no reference is made in this section to the filing of "Corporate Net Income Tax" reports under that particular designation does not lead to the conclusion that such report was not to be included in the language of the Fiscal Code and the Corporate Net Income Tax Act.

Any other construction would lead to a preposterous and absurd situation.

While the Corporate Net Income Tax Act of 1935 imposed a temporary tax, the tax has been continued by amendments made by each legislative session to and including the Act of April 11, 1945, P. L. 190, imposing a tax for the calendar years of 1945 and 1946 and for the fiscal years commencing in 1945 and 1946.

Let us assume that this corporation should go out of business on July 1, 1946. It would pay the tax on its fiscal year from February 1 to June 30, five months; and, if the contention of defendant is correct, it would then pay for an additional month, instead of paying for January 1937. It would be absurd and inequitable to pay the tax for the last month of the corporate ex-

istence, which probably might be infinitesimal as compared with a tax for January 1937 when it was a prosperous, going concern.

We repeat it owed the net income tax on a calendar year basis until it got off such basis, and should have made report thereof for the month of January 1937.

To illustrate further: A company might decide to change its fiscal year to begin December 1st after it had been paying on a calendar year basis. If defendant's position is correct, it would then pay no tax for the 11-month interim until the legislature finally abandoned this tax, if it ever does. At such time the economic condition might be such that it would pay only a small proportion of the tax which it would have been required to pay when it changed from a calendar year to a fiscal year basis, while corporations paying on a straight calendar year basis would have to pay the tax for the earnings of each period. This would create not only an inequitable and unfair situation, as against corporations paying on a calendar year basis, but the tax would lack uniformity.

And to illustrate further: A company could periodically escape liability by changing from a calendar year to a fiscal year basis, and then back from a fiscal year to a calendar year basis without paying the interim periods, and might escape reporting on a considerable part of the year. Certainly the legislature did not intend to create such an absurd, inequitable, and unreasonable situation. Nor do we think there is anything requiring us to so construe the statutes.

2. Defendant contends that to require defendant to pay the corporate net income tax for the month of January 1937 and for two full years beginning February 1, 1937, and February 1, 1938, would be unconstitutional, as violating the uniformity clause of our State Constitution, and the equal protection clause of the fourteenth amendment to the Constitution of the United States.

We think there is no merit in this position. Of course settlement of taxes for a given period must be uniform with settlements made against other corporations, for the same period (Commonwealth v. Lake Shore & Michigan Southern R. R. Co., 3 Dauphin 172), and tax settlements must be uniform upon corporations of the same class: Commonwealth v. Repplier Coal Co., 348 Pa. 372, 388; Commonwealth et al. v. A. Overholt & Co., Inc., 331 Pa. 182, 191; Commonwealth v. Brinks, Inc., 346 Pa. 296, 303. But the Corporate Net Income Tax Act definitely creates three classes: one which reports and pays the tax for the calendar year; one which reports and pays for the fiscal year; and one which changes from the calendar year to the fiscal year.

So that there is no room for an argument for lack of uniformity, if all corporations changing from a calendar to a fiscal year basis are treated alike.

The Erie Dry Goods Company cannot predicate any argument upon the fact that in the future the legislature may see fit to abandon this temporary tax and thereby create some unconstitutional situation which might in the future affect it.

In Knowles Estate, 295 Pa. 571, which holds that one who has not been harmed cannot contend that an act is unconstitutional, Chief Justice Moschzisker said (p. 591) :

". . . there is no more reason for assuming that, sometime in the future, the act now before us will or may be declared unconstitutional than for making such an assumption as to any other tax statute which has been or may be enacted."

See also Commonwealth ex rel. v. Reese et al., 293 Pa. 398, Boocks' Petition, 303 Pa. 363, Commonwealth v. Smith, 42 Dauphin 43.

If the legislature terminates the Corporate Net Income Tax Act, the presumption is that it will constitutionally provide for all inconsistencies or inequalities

which may then arise with reference to the difference in reporting and paying on a calendar year and fiscal year basis. Defendant is in no position to anticipate any unconstitutional future enactment.

When such time arises, defendant will have at least three remedies: (1) The Department of Revenue may settle the tax on an 11, instead of a 12, months basis in the last effective year, as suggested by the letter of the Deputy Secretary of Revenue, a copy of which is attached to the stipulation of facts in this case and marked Exhibit D; (2) the Board of Finance and Revenue could, on petition for review, impose a tax for only 11 months, under section 1103 of the Act of April 9, 1929, P. L. 343, as amended, 72 PS §1103, or the Board of Finance and Revenue could exercise its equitable powers in granting redress upon a petition for refund, and impose a tax for 11 months, under the Act of April 9, 1929, P. L. 343, as amended by Act of May 15, 1945, P. L. 528, 72 PS §503; or (3) failing to secure relief, defendant could appeal, and, upon such appeal, there could be a stipulation that the tax should be imposed for 11 months, or, failing to obtain the stipulation, it may be assumed that the court would prevent the imposition of tax for 13 months.

This is an attempt on the part of appellant to escape the tax on net income for the month in which the net income was realized, and to have the tax imposed for some later month.

The situation is created by defendant itself desiring to change from a calendar to a fiscal year basis. There was no compulsion on the part of the Commonwealth, and it hardly lies with defendant to attempt to escape tax on its net income for the specific month, and transfer the Commonwealth's right to collect to some other month by raising some fanciful constitutional question as the consequences of the position which defendant itself has voluntarily assumed.

For these reasons we find nothing unconstitutional in the imposition of the tax.

3. Is defendant liable for the late filing of the report for the month of January 1937?

This report was filed May 13, 1938, 13 months after the time it should have been filed.

Section 4 of the statute provides: "If the officers of any corporation shall neglect, or refuse to make any report as herein required, . . . an additional ten per centum of the amount of the tax shall be added by the department to the tax determined to be due." Such penalty was added and has not been paid.

Defendant contends that it acted in good faith in interpreting the Act of 1937 as not requiring it to file a report of net income for the month of January 1937. It also contends that the letter of the Department of Revenue, dated February 20, 1937, Exhibit B, was misleading. We do not so interpret it. That letter said: "It is necessary that you file Capital Stock and Corporate Loans Tax Reports for the calendar year 1936 and a report from January 1, 1937 to January 31, 1937. The latter mentioned report will be due in this Department on or before April 15, 1937." This letter advised the company that it should file its capital stock and corporate loans reports for the calendar year 1936, and a report for the interim month of January 1937. How could this be misleading? The corporation knew that it was required to file capital stock and corporate loans tax reports and pay those taxes. It also knew that it was required to file corporate net income tax reports, and would have been required to file such reports on the calendar year basis if it had not itself secured the right to file on a fiscal year basis. If required to file the two reports mentioned, on what theory would it have been relieved from filing an interim income tax report? It would take clear language to interpret the statutes to relieve defendant from paying the tax calculated upon the net income for the month in which the income was received.

We are of opinion that there were not such serious doubts as to the proper construction of this act as to relieve defendant from filing the corporate net income tax report for the month of January by April 15, 1937, the time fixed by the statute.

A corporation will be relieved against a penalty where the taxing officers have misled the corporation: Commonwealth v. Welsbach Company, 16 Dauphin 130; Commonwealth v. Lehigh Valley R. R. Co., 44 Dauphin 238, 245, 248.

But there is nothing in this record to show that the fiscal officers did anything to mislead defendant. All that the record shows is that on May 4, 1938, counsel for appellant conferred with the Deputy Secretary of Revenue as to whether appellant was required to file with the department the corporate net income tax report for the month of January 1937, and was advised that appellant should file such report, along with the corporate net income tax report for 12 months ending January 31, 1938. This conference was held at least a year after the report was due, and contains no suggestion that counsel for defendant was misled.

For these reasons we are of opinion that there is no substantial ground for striking off the penalty.

It appears that all the tax, including a resettlement made on account of report of change to the Federal Government, has been paid, except the penalty of $78.89, which was settled against defendant July 24, 1939.

Amount of penalty due ................... $78.89
Interest from 60 days after settlement, September 22, 1939, to March 11, 1946...... 30.53
$109.42
Attorney General's commission, five percent. 5.47

And now, March 11, 1946, judgment is hereby entered in favor of the Commonwealth and against the Erie Dry Goods Company in the sum of $114.89, unless exceptions be filed within the time limited by law.