Fisher Controls Company, Inc., Appellant *v.* Commonwealth of Pennsylvania, Appellee. (2 cases)

Argued December 3, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Sherill T. Moyer*, with him *Robert L. Weldon, Frank A. Sinon*, and *Rhoads, Sinon & Reader*, for appellant.

*R. Scott Shearer*, Deputy Attorney General, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, March 31, 1976:

Fisher Governor Company (Governor) and Fisher Controls Company, Inc. (Controls) have filed de novo appeals from adverse decisions of the Board of Finance and Revenue. The parties have agreed to a trial without jury and have stipulated all pertinent facts.

The focus of this controversy lies in the Pennsylvania Corporate Net Income Tax and its application to appellants for the respective tax periods of January 1, 1969 through August 12, 1969 (Governor), and August 13, 1969 through December 27, 1969 (Controls). More precisely, appellants contend that their net incomes for the

relevant periods should have been subjected to a tax rate of 7% rather than the 12% rate advocated and applied by the Commonwealth. Appellants have attempted to buttress their contention by reference both to the appropriate statutory provisions and to certain constitutional prescriptions which they deem violated by imposition of the higher rate.

The uninterrupted chronological sequence between the termination date of Governor's relevant tax period and the inception date of Controls' is not coincidental. On August 12, 1969, Governor's assets were absorbed into the Monsanto Corporation and, simultaneously therewith, the same assets were transferred to a newly formed corporation, Controls. While the corporate taxpayers have repeatedly characterized themselves as a single continuing corporate entity, we believe such a position is so meritless that it does not warrant a detailed response from this Court. Governor legally expired on August 12, 1969, and the subsequent appearance of its assets within the corporate framework of Controls was simply the result of a transplant, and could not give continued vitality to Governor's legal existence.

Prior to December 31, 1969, appellants properly assumed that their net incomes received and accrued during 1969 would be subjected to a tax rate of 7½%[1] under the Pennsylvania Corporate Net Income Tax.[2] However, on that date, the Act of 1967 was amended to read as follows:

"Every corporation shall be subject to, and shall pay for the privilege of doing business in this Commonwealth . . . a State excise tax . . . at the rate of

---

1. From where the 7% rate repeatedly cited by the parties arose remains a mystery to this Court.

2. See the Act of September 29, 1967, P. L. 310, which amended the Corporate Net Income Tax Act, Act of May 16, 1935, P. L. 208.

*twelve per centum* per annum upon each dollar of net income . . . received by and accruing to such corporation during the calendar years one thousand nine hundred sixty-nine and each year thereafter, except where a corporation reports to the Federal Government on . . . a fiscal year and has certified such fact to the department as required by section four of this act, in which case such tax . . . shall be levied, collected and paid upon all net income received by and accruing to such corporation during each fiscal year commencing during the calendar year one thousand and nine hundred sixty-nine and each year thereafter . . . ."[3] (Emphasis in original.) (Emphasis added.)

The Act of 1969 additionally contained a retroactivity clause:

"This act should become effective immediately, and shall apply to tax imposed for calendar year 1969 and thereafter, or for fiscal years beginning in 1969 and thereafter . . . ."

Prior to its dissolution, Governor had been reporting its corporate net income tax liability on a calendar year basis. Upon its formation, Controls elected to report the same liability on a fiscal year basis and so notified the Department of Revenue. Pursuant to their interpretation of the above quoted language from the Act of 1969, appellants make the following assertions: (1) Governor's abbreviated tax period during the year 1969 (January 1 through August 12) was not a "calendar year," but rather a "short period" and was thus beyond the scope of the Act of 1969; (2) Controls' 1969 tax period (August 13 through December 27) was not a "fiscal year," but rather also a "short period" and the same result ensues; and (3) in addition to reasons 1 and 2, the retroactivity

---

3. Act of December 31, 1969, P. L. 407. The Corporate Net Income Tax Act and its two cited, amending provisions were later repealed and replaced by the Tax Reform Code of 1971, Act of March 4, 1971, P. L. 6, *as amended*, 72 P. S. §7101 et seq.

clause of the Act of 1969 does not apply to Controls since, had Controls been a fiscal year taxpayer in 1968, its fiscal year which would have included the period from August 13, 1969 through December 27, 1969 would have begun in 1968.

Appellants' identification of their abbreviated 1969 tax periods as "short periods," a specie separate and distinct from either a "calendar year" or a "fiscal year," allegedly stems in part from an observation offered by the Dauphin County Court of Common Pleas in the case of *Commonwealth v. Erie Dry Goods Company*, 59 Pa. D. & C. 390, 398 (1946):

> "[T]he Corporate Net Income Tax Act definitely creates three classes [of corporate taxpayers]: one which reports and pays the tax for the calendar year; one which reports and pays for the fiscal year; and one which changes from the calendar year to the fiscal year."

Inserting themselves within the last mentioned "'class," appellants contend that their 1969 tax periods could not be a "calendar year" or a "fiscal year" since the latter are described as distinct from the third class. From this, appellants conclude that neither the tax imposition section nor the retroactivity section of the Act of 1969 apply to them since those sections address themselves to calendar and fiscal year taxpayers only.

Appellants' presentation is not persuasive for at least two reasons. First, appellants *do not* come within the third class of taxpayers set forth in *Erie Dry Goods*. Governor and Controls are not a single corporate taxpayer which elected a midyear change in its reporting system. They are two distinct corporate taxpayers, one of which reported on a calendar year basis and the other on a fiscal year basis. Second, the context within which the *Erie Dry Goods* court enunciated its three-class delineation was nearly the antithesis of that suggested by the nature of appellants' reliance. The court, in fact, em-

phasized that all three classes fell within the purview of the Corporate Net Income Tax Act, while holding that the three classes need not be treated alike under the uniformity clause of the Pennsylvania Constitution.

Besides the *Erie Dry Goods* case, Governor cites this Court's language in *Allentown Wholesale Grocery Company v. Commonwealth*,[4] as additional authority for its disclaimer of liability under the Act of 1969:

> " 'Webster's New International Dictionary . . . states that "calendar . . . year . . . is divided into 12 calendar months, and is now reckoned as beginning with January 1 and ending with December 31." ' "

Since Governor's tax period ended prior to December 31, 1969 (having been terminated by action of the Company itself), Governor contends that it was not a calendar year taxpayer and thus beyond the scope of the Act of 1969. This assertion totally ignores the language of the Act of 1969 which applies a 12% rate to all net income received by or accruing to a corporation *during* the calendar year 1969. Governor did receive net income *during* the period from January 1, 1969 through December 31, 1969. Whether the actual period of receipt of such income encompassed a full 12 months or a lesser time is immaterial in determining the application of the Act of 1969.

Not to be outdone by its co-appellant, Controls proposes that a fiscal period which would include the relevant tax period of August 13, 1969 through December 27, 1969, would ordinarily have begun in December of 1968. Such a fiscal year would not then be within the scope of the Act of 1969 which refers only to fiscal years commencing during the calendar year 1969 and years thereafter. We agree with Controls' premises in the abstract, but not as applied to a corporation *which did not even exist* in 1968. Whether or not its fiscal year encompassed a full 52-53 week period, Controls was a fiscal

---

4. 5 Pa. Commonwealth Ct. 426, 429, 291 A.2d 336, 337 (1972).

year taxpayer which began operations on August 13, *1969*. Controls, to avoid this tax, cannot hypothesize a fiscal year beginning in a year before the year it came into existence.

In summary, both Governor and Controls are subject to the 12% rate on net income imposed by the Act of 1969. That Act includes both calendar year taxpayers (Governor) and fiscal year taxpayers (Controls), and its applicability is in no way diminished where the calendar or fiscal period is abbreviated.

Governor's constitutional argument against the imposition of a 12% tax rate relies upon the taxing authorities' treatment of certain other corporations which ceased doing business during 1969. It has been stipulated that over 700 such corporations were permitted to satisfy their corporate net income tax liabilities by payment of a 7% tax on net income received or accrued during 1969. Governor believes that this disparity in treatment is a flagrant violation of the uniformity clause of the Pennsylvania Constitution[5] and the equal protection clause of the Federal Constitution.[6]

So it would be had the law provided for such disparity. But such is not the case. Rather those corporations which otherwise would have been subject to the higher tax rate by reason of the retroactive provisions of the Act of 1969 made their returns, paid tax at the lower rate and for various purposes, such as dissolution or merger, obtained clearance certificates *before* enactment of the Act of 1969. Settlements with respect to all other taxpayers made after December 31, 1969 were effected at the 12% rate consistent with the retroactive provisions of the amendment. Retroactive provisions of a taxing statute increasing the rate of tax cannot reach a taxpayer whose tax liability was lawfully settled and paid before enactment of the statute increasing the rate. There is no want

---

5. Pa. Const. art. VIII, §1.

6. U.S. Const. amend. XIV, §1.

of uniformity in not applying retroactive provisions of a tax rate increase to those it cannot reach.

Controls' constitutional attack is less clearly defined but no more persuasive. It maintains that other fiscal year taxpayers were subjected to a 12% corporate net income tax for a period of only 3½ years while Controls has been subjected for 4½ years. A general statement to this effect appears within the stipulated facts although the wisdom of the Commonwealth's so agreeing escapes us as it obviously encompasses tax years of Controls not before us in this appeal nor adjudicated by administrative review procedures. What is clear, however, is that all fiscal year taxpayers were treated alike during the relevant tax period of August 13, 1969 (when Controls' corporate existence began) through December 27, 1969, the "short year" for which Controls disputes the application of the 12% rate to its tax liability. If, in fact, a uniformity problem exists, it did not arise as a result of the treatment of Controls for that period. Controls cannot legally test in this appeal an alleged want of uniformity related to the liability asserted against it in subsequent tax years as compared to other taxpayers over similar periods, and it cannot stipulate facts to enlarge its legally permissible attack upon the uniformity of the retroactive provisions of the Act of 1969 with respect to the tax year on appeal.

We enter the following

## ORDER

Now, March 31, 1976, the appeals of Fisher Governor Company and Fisher Controls Company, Inc. from the decisions of the Board of Finance and Revenue are hereby dismissed. Unless exceptions are filed to this Order within thirty (30) days hereof, the Chief Clerk is hereby directed to enter judgment in favor of the Commonwealth and against Fisher Governor Company in the amount of $33,324.62, and against Fisher Controls Company, Inc. in the amount of $26,671.30.