648 A.2d 1329

**GAROFOLO, CURTISS, LAMBERT & MACLEAN, INC.**
**(formerly Garofolo, Curtiss & Company, Inc.) for itself**
**and for all similarly situated corporations, Petitioners**

v.

**COMMONWEALTH Of Pennsylvania, DEPARTMENT**
**OF REVENUE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 1993.

Decided Sept. 30, 1994.

Reargument Denied Oct. 28, 1994.

674

---

Alfred W. Putnam, Jr., for petitioners.

Kevin A. Moury, for respondent.

Before McGINLEY and FRIEDMAN, JJ., and RODGERS, Senior Judge.

RODGERS,[1] Senior Judge.

In July 1992, Garofolo, Curtiss, Lambert & MacLean (Garofolo), a Pennsylvania corporation and a management consulting firm specializing in executive search services, filed a petition for review in our original jurisdiction, against the Commonwealth of Pennsylvania, asking this Court to declare Section 16 of Act 22[2], suspending operation of net loss carryover deductions from the taxable income of corporations unconstitutional, as violative of the due process (Article I, Section 1) and uniformity (Article VIII, Section 1) provisions of the Pennsylvania Constitution.

Prior to the enactment of Act 22, Section 401(3)(4) of the Tax Reform Code, 72 P.S. § 7401(3)(4) granted a carry-forward of net losses to be deducted against one of the three succeeding year's income for corporate net income tax purposes, phased in over the three years beginning with 1981 and ending with 1983. In 1987, 1988 and 1989, Garofolo incurred losses in Pennsylvania. In 1990, it earned income that was offset by the net losses from 1987 and 1988 and $392,060 of its 1989 net loss. Garofolo had a remaining loss of $155,754 from 1989 after its 1990 income tax was reduced to zero. For the years 1987–1990 it paid no income taxes even though it had substantial income in 1990.

By reason of the passage of Section 16 of Act 22, suspending operation of the net loss carry-forward deduction for years beginning in 1991, Garofolo could not use its remaining 1989 net loss to reduce its 1991 taxable income, resulting in an increase in its tax liability for 1991 of $19,079. However, Garofolo has brought its petition on behalf of itself and for all similarly situated corporations. Thus, if Section 16 is declared unconstitutional, all such corporations with unused net losses from 1988 and 1989 may seek reductions of their 1991 income tax liability.[3]

1. This case was reassigned to the writer on July 25, 1994.

2. Act of August 4, 1991, P.L. 97, 72 P.S. §§ 7401–8296 (Act 22).

3. An excerpt from the legislative history attached to the petition for review, (Exhibit B), in 1981 estimated the revenue loss by reason of the

The Commonwealth filed preliminary objections in the nature of a demurrer to Garofolo's petition, which were dismissed, based on the court's opinion in the companion case of *Surgical Laser Technologies v. Department of Revenue,* 156 Pa.Commonwealth Ct. 48, 626 A.2d 664 (1993), because the facts were uncertain. The issues in *Surgical* now appear to be moot, because Surgical Laser also had a net loss in 1991, and its 1988 net loss would have expired unused in any event.

■ The Commonwealth's answer in this case denied that Section 16 of Act 22 was unconstitutional, but the only factual issues raised were the correct amount of Garofolo's remaining 1989 net loss carry-forward and whether Garofolo had reasonably relied on the availability of net loss carry-forwards in continuing in business in Pennsylvania. However, based upon the admitted material facts, the issues raised by the pleadings present pure legal questions, requiring no development of evidence and, therefore, this Court will treat Garofolo's motion for summary judgment as a motion for judgment on the pleadings.[4] *Bensalem Township School District v. Commonwealth,* 518 Pa. 581, 544 A.2d 1318 (1988).

■ Garofolo claims the law violates the uniformity clause of the Pennsylvania Constitution. However, the petitioner admits there is no constitutional requirement that the corporate net income statute must contain any deduction for net operating loss, nor does it contend that a net income loss

enactment of the carry-forward loss provision for the first year to be from nine to sixteen million dollars. On June 15, 1994, the Pennsylvania General Assembly enacted House Bill 868, Act No. 48 of 1994, which, inter alia, reinstated the carry-forward loss deductions from corporate net income for the taxable years beginning in 1995 and thereafter and also grants such deductions beginning with the 1995 taxable year for such losses from 1988 (1 year), 1989 (2 years) and 1990–1993 (3 years), but such losses may not be used in calculating net income for the 1991–1994 taxable years.

4. After close of the pleadings, the only supplement to the record was Garofolo's motion for summary judgment, attaching copies of Garofolo's federal and state tax returns, showing it would have been able to use its 1989 net operating loss to reduce its 1991 taxable income by $155,754 instead of $124,962 as claimed by the Commonwealth in its answer. The difference is not material in considering the motion for judgment on the pleadings.

provision can never be repealed. But Garofolo does contend that, because another corporation with $155,754 more net income in 1990 than Garofolo, may have reduced its 1990 tax liability to zero, gaining a benefit of $13,239, by using its entire 1989 net loss carry-forward in like amount, Garofolo, whose 1990 tax liability was also zero, has a constitutional right to reduce its 1991 tax liability by $19,079 by using the balance of its 1989 loss.[5] The Constitution does not require perfect uniformity of tax burden over several years or even over one year.

In the case of *Commonwealth v. Rohm and Haas Co.*, 28 Pa.Commonwealth Ct. 430, 368 A.2d 909 (1977), *aff'd*, 478 Pa. 164, 386 A.2d 491, *appeal dismissed*, 439 U.S. 805, 99 S.Ct. 61, 58 L.Ed.2d 97 (1978), the corporations which had elected to take foreign taxes paid as a credit against federal income tax liability rather than as a deduction from gross income, claimed a constitutional right to deduct the foreign taxes paid to reduce their liability for state net income taxes because corporations who had elected to take such foreign taxes paid as a deduction on their federal liability were permitted to take such deduction on their state liability. In rejecting this argument, the court said:

> Finally, we must deal with the constitutional argument that the Act both as written and as applied to Appellants violates the uniformity clause and Appellants' equal protection rights by discriminating against taxpayers electing to take foreign taxes as a credit on their federal returns in favor of those electing to take them as a deduction, and because in two other instances the deductions sought by Appellants were allowed.

> Succinctly stated, the uniformity clause and equal protection clause, which stand in pari materia in tax matters, ... require that there be equality of burden upon the classes or things subject to the tax in question.... They do not,

5. Section 17 of Act 22 increased the tax rate from 8.5% to 12.25%. Thus, a corporation using a 1989 carry-forward of $155,734 to reduce its 1990 tax liability received a tax benefit of $13,239. If Garofolo were able to use the balance of its 1989 carry-forward to reduce its 1991 tax liability, it would receive a benefit of $19,079.

however, impose an iron-clad rule of equality so as to inhibit flexible and reasonable schemes of taxation, . . . and only substantial uniformity and approximate equality are required. . . .

In this attack upon the Act as written, Appellants bore the heavy burden of proving that it is 'clearly, palpably and plainly' violative of either the federal or state constitutions. . . . This burden, which has not been met, is not lightened by the fact that the constitutionality of the Act has been upheld on prior occasions. . . .

Where the same rate of taxation is applied to the same tax base, no constitutional infirmity is made out, and no unreasonable classification can be said to exist. . . . Here, the Legislature has adopted as the tax base net income as returned to and ascertained by the Federal Government. Section 2 of the Act, 72 P.S. § 3420b; . . . . The same rate of tax is applied to all taxpayers subject to the Act. Section 3 of the Act, 72 P.S. § 3420c. How Congress has chosen to compute ultimate Federal tax liability under the IRC, and the elections it has offered to taxpayers are of no consequence under the Act in the context of this litigation, . . . and when tax legislation treats all within its scope in a substantially uniform matter, it cannot be said to discriminate because of classifications made by other legislation. . . .

*Id.* 28 Pa.Cmwlth. at 436–37, 368 A.2d at 912–13 (citations omitted.)

The decision of the Commonwealth Court was affirmed *sub nom.* in *Commonwealth v. Westinghouse Electric Corp.,* 478 Pa. 164, 386 A.2d 491, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 61, 58 L.Ed.2d 97 (1978), where the court said:

[T]his Court has held that a state tax is not violative of the uniformity clause if the tax 'applies to all corporations with which the Commonwealth has power constitutionally to deal. . . . Where the (state tax) base is the same and the rate unvarying, there is no lack of uniformity.' . . . In the case at bar, it is obvious that the Act did not violate the uniformity clause because the Act's tax base, the corporation's 'taxable income . . . (as) ascertained by the Federal

Government' for Federal tax purposes, applied the 'same ... unvarying' rate to all corporations.

*Id.* at 169, 386 A.2d at 493 (citations omitted.) In this case it is clear that the state tax base for the year 1991 was the same and the rate unvarying for all corporations and, therefore, there was no violation of the uniformity clause.

Garofolo relies on *Commonwealth v. Budd Co.*, 379 Pa. 159, 108 A.2d 563 (1954), *appeal dismissed*, 349 U.S. 935, 75 S.Ct. 782, 99 L.Ed. 1264 (1955), where the court held unconstitutional the 1947 corporate net income tax act prohibiting the deduction from 1944 net income of carry-back losses suffered in 1946, which the superseded 1943 Act had allowed on the grounds that it retroactively changed the law in calculating 1944 net income, and because it arbitrarily allowed such deduction by corporations who had settled their tax liability with the state before the effective date of the 1947 Act.

The continued vitality of *Budd* is questionable. In the case of *Fisher Controls Co., Inc. v. Commonwealth*, 476 Pa. 119, 381 A.2d 1253 (1977), Justice Roberts points out that *Budd* is a plurality opinion and, in *Fisher*, the court declined to follow the dissenting opinion that found unlawful discrimination because taxpayers who had settled their liability paid at a lower rate than other corporations. In *Fisher*, the Supreme Court was affirming the decision of the Commonwealth Court in the same case at 24 Pa.Commonwealth Ct. 199, 354 A.2d 920 (1976). Judge Bowman had rejected the lack of uniformity argument in these words:

[T]hose corporations which otherwise would have been subject to the higher tax rate by reason of the retroactive provisions of the Act of 1969 made their returns, paid tax at the lower rate and for various purposes, such as dissolution or merger, obtained clearance certificates *before* enactment of the Act of 1969. Settlements with respect to all other taxpayers made after December 31, 1969 were effected at the 12% rate consistent with the retroactive provisions of the amendment. Retroactive provisions of a taxing statute increasing the rate of tax cannot reach a taxpayer whose tax liability was lawfully settled and paid before enactment of

the statute increasing the rate. There is no want of uniformity in not applying retroactive provisions of a tax rate increase to those it cannot reach.

*Id.* at 205–06, 354 A.2d at 924 (emphasis in original.)

*Budd* is also clearly distinguishable from this case because the 1947 Act retroactively changed the state tax base for the 1944 tax year, in violation of *Welch v. Henry,* 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938). That is not the case here. Under the 1991 Act all corporations are required to pay the corporate net income tax for the year 1991 at the same rate on the same tax base and are entitled to the same deductions. Nor is the tax liability for years prior to 1991 in any way changed.

Garofolo's reliance on *Amidon v. Kane,* 444 Pa. 38, 279 A.2d 53 (1971), is also misplaced. In *Amidon,* the court held that the Pennsylvania personal income tax applying a flat rate to "taxable income", as defined in the federal Internal Revenue Code, lacked uniformity, because it resulted in different effective rates on gross income, due to deductions and exemptions that were available to some taxpayers and not to others. However, the court adhered to its view that the Pennsylvania Corporate Net Income Tax, which also utilized net income as defined by the federal Internal Revenue Code, did not lack uniformity even though it might, for some reason, result in different effective rates on corporations. The court reasoned that the corporate net income tax was not an income tax, but an excise tax for the privilege of doing business in the Commonwealth.

Garofolo also claims that the law violates uniformity because it results in different effective rates since the net loss carryforward deduction was not available to reduce its tax liability in 1991, but was available for use by other corporations with larger profits in 1990. But *Amidon* makes clear that approval of the definition of "taxable income" as defined in the federal Internal Revenue Code for use in determining liability for the Pennsylvania corporate net income tax does result in different

effective rates for corporations whose "cost" of making a profit differs, but still does not offend the uniformity clause.

Similarly, the inability of the corporation in *Rohm and Haas* to deduct foreign taxes paid to reduce its liability for state net income taxes, resulted in a higher effective tax rate as compared to those corporations who were entitled to use the deduction. But the court held there was no violation of the uniformity clause because the same rate of taxation was applied to the same tax base.

Garofolo also contends that the law violates due process because (1) it is retroactive, (2) it breaches a quasi-contract, and (3) it takes property without compensation.

■ Garofolo argues that, when it incurred its net operating loss in 1989, the law permitted it to carry-forward the loss as a deduction from profits for three years and that the law was retroactively changed in 1991 to disallow the deduction in 1991 and 1992. However, Garofolo admits there is no constitutional requirement that a corporate net income statute must contain a deduction for net operating loss, and also admits that such a deduction may be repealed, but now contends such repeal must be phased out over three years, since it had been phased in over that period. Garofolo cites no authority for its contention except *Budd*, which involved the repeal, not of a carry-forward loss but of a carry-back loss, which retroactively changed the state tax base for the 1944 tax year. In this case, for the year 1991, and thereafter, the same tax rate is applied to the same tax base, which is all that the law requires to satisfy the uniformity and due process clauses of our Constitution.

■ Garofolo also contends the law violates due process because it takes property without compensation. Garofolo claims that while the Commonwealth may repeal the net operating loss provision for current and future losses, losses experienced in prior years become vested property rights once they are fixed in amount. It relies on *In re Prudential Lines, Inc.*, 928 F.2d 565 (2d Cir.1991), *cert. denied*, 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991), where the court enjoined a

parent corporation from taking a worthless stock deduction on its federal income tax return with respect to its bankrupt subsidiary in reorganization under Chapter 11, since that would have wiped out the subsidiary's ability to carry-forward its net operating loss to offset future income, to the possible detriment of the subsidiary's unsecured creditors. The case did not involve any question of the right of the federal government to repeal the net loss carryover provisions, but involved the interpretation of the Bankruptcy Code in a contest between the owners of the parent corporation and creditors of the subsidiary. Even in the bankruptcy setting, the court pointed out that the federal courts considering whether net operating loss carry-forwards constituted property of the bankrupt's estate had reached varying conclusions in varying contexts. *Id.* at 571. A tax deduction is not a vested right of the taxpayer. The net operating loss carry-forward deduction is a creature of the legislature, subject to repeal, suspension or reinstatement by the legislature, so long as it does not act in an arbitrary and unreasonable manner. *Equitable Life Assurance Society of the United States v. Murphy,* 153 Pa.Commonwealth Ct. 338, 621 A.2d 1078 (1993).

■ Finally, Garofolo claims a due process violation, because the Commonwealth breached a quasi-contract. Garofolo attached to its petition for review a portion of the legislative history of the 1981 law, showing the net operating loss deduction was passed to encourage the growth and development of small business in the state, and to encourage them to locate, expand and stay within Pennsylvania. It also attached copies of two publications of the Pennsylvania Department of Commerce stating that highlights of the state's business tax changes included Net Loss Carry–Forward provisions and that small businesses should be aware of loss carry-forward legislation, enacted in 1980, particularly beneficial to new businesses which may incur losses in their formative years and then could be used to offset income earned in later profitable years. The pamphlet also stated that "Beginning January 1, 1983, and thereafter, corporations are allowed to carry losses over a three-year period." (Petition for Review, Exhibit C–2.)

Garofolo claimed in its petition that being aware of the law it made or continued to make investments and do business in the state and anticipated that it would have the benefit of the law when it incurred tax losses and that the Commonwealth benefited from the jobs and economic activity it created and that the Commonwealth defeated the corporation's reasonable reliance on the benefit of the net operating losses from fiscal 1988, 1989 and 1990 when it eliminated the carry-forward without providing for "a similar phase out".

■ A quasi-contract is not a contract but a duty imposed by law upon a person who has obtained property or services under circumstances where reason, common sense and justice dictate that payment should be made therefor. It applies where one party has been unjustly enriched at the expense of another and is required to make restitution for the fair and reasonable value of the benefit conferred. Pennsylvania Trial Guide, Feldman Revision § 25.21 (1978).

■ In the absence of fraud, coercion, or specific request, none of which is alleged by Garofolo here, a governmental body is not unjustly enriched by benefits voluntarily conferred upon it, except where the benefit was conferred under circumstances making such action necessary for the protection of its interests or the interests of a third person. Restatement, Restitution, § 112. Thus, where a statute requires that a town support indigents, its refusal to do so may require it to make restitution. *Id.*, § 113, Comment b. Restitution may also be required where a person has performed another's duty to the public, e.g., where one removes an obstruction from a public road which has become imminently dangerous to the traveling public, if the town fails to do so. *Id.*, § 115, Comment b.

The only authority cited by Garofolo in support of its claim of unjust enrichment is *Erie v. Griswold*, 5 Pa.Superior Ct. 132 (1897), *aff'd per curiam*, 184 Pa. 435, 39 A. 231 (1898), where the court held that the city had proper authority to pass an ordinance operating as a binding contract allowing abutting property owners an abatement of their property taxes, and

where they had paved their properties from curb to curb in reliance upon the ordinance, the city could not by repealing the ordinance affect their vested property rights. There is no claim of such a binding contract with the Commonwealth in this case, nor any claim that the corporation was performing any duty owed the public by the Commonwealth. No authority is cited for the proposition that the Commonwealth is unjustly enriched because a corporation continues to stay in business in the state.

In the case of *Gee v. Eberle,* 279 Pa.Superior Ct. 101, 420 A.2d 1050 (1980), where subcontractors sought restitution from the lender, the court held that the subcontractor must show that it relied on assurances of adequate financing from the lender itself in order to recover from the lender on a reliance theory. Garofolo has not claimed that the Commonwealth assured it that the net operating loss corporate net income tax deduction would never be repealed or that it would be repealed only by phasing it out over a period of three years.

> An additional element of recovery under quasi contract is the requirement that services be performed under circumstances which put the recipient upon notice that the party performing the services expected to be paid. *Colish v. Goldstein,* 196 Pa.Super. 188, 173 A.2d 749 (1961); 13 Williston, Contracts, § 1575 (3d ed.1970).

*Sachs v. Continental Oil Co.,* 454 F.Supp. 614, 619 (E.D.Pa. 1978). Garofolo has not pleaded that such notice was given to the Commonwealth in this case.

This Court finds no violation of either the uniformity or due process provisions of the Constitution of Pennsylvania. Accordingly, on the motion for judgment on the pleadings, judgment will be awarded to the respondent, Commonwealth of Pennsylvania.

### ORDER

AND NOW, this 30th day of September, 1994, the petition of Garofolo, Curtiss, Lambert & MacLean, Inc., to declare Section 16 of Act 22 of 1991 unconstitutional is denied, and

judgment is entered on the motion for judgment on the pleadings in favor of the respondent, Commonwealth of Pennsylvania, Department of Revenue, and against the petitioner, Garofolo, Curtiss, Lambert & MacLean, Inc.

FRIEDMAN, Judge, dissenting.

The majority awards judgment to the Commonwealth on a motion for judgment on the pleadings,[1] finding no violation of either the uniformity or due process provisions of the Pennsylvania Constitution. I disagree and, thus, respectfully dissent.

Section 401(3)4. of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7401(3)4., which allowed corporate taxpayers to deduct prior net losses from taxable income of the three succeeding years, was phased in over three years from 1981 to 1983. However, on August 4, 1991, the Pennsylvania General Assembly amended Code section 401(3)4.(a) suspending operation of the net loss carryover deduction for years beginning in 1991, thereby eliminating unused deductions for losses incurred in 1988, 1989 and 1990. Section 16 of the Act of August 4, 1991, P.L. 97, No. 22, 72 P.S. §§ 7401(3)4.(a) (Act 22).[2] As a result of the discontinuance of the net loss carryover deduction, Garofolo

1. Actually, the Petitioners filed a Motion for Summary Judgment to which the Commonwealth filed an Answer, but not a cross-motion for summary judgment. The majority treats Garofolo's motion as a motion for judgment on the pleadings and not only denies judgment to Garofolo but enters judgment in favor of the Commonwealth. A court may grant judgment to the non-moving party on a motion for judgment on the pleadings, but this device is not available on a motion for summary judgment unless the responding party files a cross-motion or unless the court, as the majority does here, considers the motion mislabeled and treats it as a motion for judgment on the pleadings. 6 Standard Pennsylvania Practice §§ 31.37 and 32.97.

2. Prior to the enactment of Act 22, section 401(3)4.(a) of the Code stated:
    (a) For taxable years beginning in 1982 and thereafter, a net loss deduction shall be allowed from taxable income as arrived at under subclause 1 or, if applicable, subclause 2.
In addition, at section 401(3)4.(c), the Code specified which net losses could be carried over:
    (c) The net loss deduction shall be the lesser of the amount of the net loss or losses which may be carried over to the taxable year or

could not use its 1989 net loss to reduce its 1991 taxable income.

Following enactment of Act 22, Garofolo initiated this action by filing a Petition for Review in the nature of a complaint in equity (Petition) alleging that Act 22 adversely impacts it and other similarly situated corporations and seeking a declaration that Act 22 is unconstitutional in that it violates the uniformity and due process [3] requirements of the Pennsylvania Constitution. The Commonwealth filed preliminary objections which we dismissed, *Garofolo, Curtiss, Lambert & Maclean, Inc. v. Commonwealth of Pennsylvania, Department of Revenue,* (No. 255 M.D.1992, filed April 8, 1993), and, subsequently, filed an Answer to Garofolo's Petition. Garofolo then filed a Motion for Summary Judgment,[4] which I would grant on the grounds that the 1991 amendment, as it affects deduction of

> taxable income as determined under subclause 1 or, if applicable, subclause 2. A net loss for a taxable year may only be carried over pursuant to the following table.
>
> | Taxable Year | Carryover |
> |---|---|
> | 1981 | 1 taxable year |
> | 1982 | 2 taxable years |
> | 1983 and thereafter | 3 taxable years |
>
> The earliest net loss shall be carried over to the earliest taxable year to which it may be carried under this schedule.
>
> Following its amendment by Act 22, the relevant portion of Code section 401(3)4. provides:
>
> 4.(a) For taxable years beginning in 1982 through taxable years beginning in 1990, a net loss deduction shall be allowed from taxable income as arrived at under subclause 1 or, if applicable, subclause 2. For taxable years beginning in 1991 and thereafter, the net loss deduction allowed for years prior to 1991 shall be suspended, and no carryover of net losses from taxable years 1988, 1989 and 1990 shall be utilized in calculating net income.

3. With regard to its due process argument, Garofolo asserts that retroactive discontinuance of the Pennsylvania corporate net operating loss provision violates due process under Article I, § 1 of the Pennsylvania Constitution by: 1) depriving taxpayers of their vested interest in Pennsylvania net operating losses already accrued; 2) constituting retroactive taxation in contravention of Pennsylvania law; and 3) representing inequitable repudiation of a quasi-contract. (Petition, ¶ 24 and ¶ 25.) Garofolo's uniformity arguments are addressed in greater detail later in this opinion.

4. A motion for summary judgment is appropriate where the case is clear and free from doubt; the record, viewed in the light most

1988 and 1989 net losses, violates constitutional uniformity requirements.[5] My reasoning follows.

Garofolo contends that Act 22 violates the uniformity clause of Article VIII, § 1 of the Pennsylvania Constitution by: 1)

favorable to the non-moving party, must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. No. 1035(a) and (b). Summary judgment serves to eliminate the waste of time and resources of both litigants and the courts where a trial would be a useless formality. *Liles v. Balmer,* 389 Pa.Superior Ct. 451, 567 A.2d 691 (1989). A motion for summary judgment is an appropriate procedural device in a declaratory judgment proceeding. *Pennsylvania State Lodge of Fraternal Order of Police v. Bailey,* 128 Pa.Commonwealth Ct. 72, 562 A.2d 985 (1989), *aff'd,* 525 Pa. 265, 579 A.2d 1295 (1990).

The Commonwealth's Answer to Garofolo's Motion for Summary Judgment challenges certain factual averments in the Petition. However, these facts are not material to the uniformity issue upon which I would base this decision. I note, however, that if it were necessary to reach Garofolo's due process or quasi-contract arguments and the disputed factual averments were deemed to be genuine issues of fact material to those arguments, summary judgment would not be appropriate. The challenged factual averments indicate that the enactment of section 401(3)4. of the Code and the Commonwealth's actions in publicizing the enactment created expectations among corporate taxpayers which were frustrated by section 16 of Act 22. For instance, in ¶ 7 of its Petition, Garofolo alleges that Pennsylvania designed the net operating loss carryforward provision to encourage investment and job creation in the state and to provide relief to businesses that experience cyclical downturns; in ¶ 9, Garofolo alleges that it was aware of the net operating loss carryover provision when, in 1988, it made and continued to make substantial investments and commitments in Pennsylvania during 1988, 1989, 1990; in ¶ 13 of the Petition, Garofolo alleges that having tailored the carryover provision to induce taxpayers' investments in Pennsylvania, the General Assembly defeated taxpayers' reasonable reliance on the tax benefit of 1988, 1989 and 1990 losses by eliminating the policy without providing for a similar phase out; in ¶ 16 of its Petition, Garofolo alleges that during the years when it operated at a loss, it anticipated that it would have the benefit of the net operating loss carryover provision, so that once it became profitable, it could use its earlier losses to reduce its current taxable income over a three-year period. In addition, Garofolo points out that if Act 22 remains in force through 1993, any losses experienced by corporations in 1989 and 1990 will be extinguished as tax benefits. (Petition, ¶¶ 18 and 19.) The briefs also indicate that the parties do not agree on whether Garofolo and similarly situated companies relied on the net loss carryover.

5. Because I would decide this case on the uniformity issue and because Garofolo had no losses in 1990, I would not address the due process

arbitrarily discriminating among corporations that incurred Pennsylvania net operating losses in 1989, treating those corporations that were able to use their 1989 losses against their 1990 tax liability differently from those that would have used the 1989 losses against their 1991 or 1992 tax liability; and 2) arbitrarily discriminating between corporations that would otherwise be able to use net losses from 1988, 1989 and 1990 and all other corporate taxpayers, placing an additional tax burden on the former subset of corporate taxpayers rather than distributing the increase over the entire class of corporate taxpayers. (Petition, ¶¶ 27–29.) I agree with Garofolo's first proposition that the subset of corporate taxpayers with net losses from 1989 are not treated uniformly under Act 22 and that this non-uniform treatment is unconstitutional.

The uniformity clause of the Pennsylvania Constitution directs that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, § 1. The Pennsylvania Supreme Court has provided guidelines for uniformity analysis:

> "[The Uniformity Clause] means that the classification by the legislative body must be reasonable and the tax must be applied with uniformity upon similar kinds of business or property and with substantial equality of the tax burden to all members of the same class.... While taxation is not a matter of exact science and perfect uniformity and absolute equality in taxation can rarely ever be attained, the imposition of taxes which are to a substantial degree unequal in their operation or effect upon similar kinds of business or property, or upon persons in the same classification, is prohibited. Moreover while reasonable and practical classifications are justifiable, where a formula or method of computing a tax will, in its operation or effect, produce arbitrary or unjust or unreasonably discriminatory results, the constitutional provision relating to uniformity is violat-

and quasi-contract arguments as they relate to loss of the carryover of 1990 net losses.

ed.... 'A tax to be uniform must operate alike on the classes of things or property subject to it....' "

*Amidon v. Kane,* 444 Pa. 38, 48–49, 279 A.2d 53, 59 (1971), quoting *Allentown School District Mercantile Tax Case,* 370 Pa. 161, 167–68, 87 A.2d 480, 483 (1952) (citations omitted).

When considering the constitutionality of Act 22, I am mindful of the well-established rule that the legislature possesses wide discretion for purposes of taxation, *Aldine Apartments v. Commonwealth,* 493 Pa. 480, 426 A.2d 1118 (1981), and that "the taxing power of the Commonwealth is vested absolutely in the legislature, with no other limitation upon its exercise than the constitutions, State and [F]ederal, and the laws of the United States." *Clouser v. Reading City,* 270 Pa. 92, 94–95, 113 A. 188, 189 (1921). Thus, the selection of the subjects for taxation, their classifications and the method of collection are legislative matters. The only constitutional limitation on this power is that the classification be reasonable and not arbitrary. *Equitable Life Assurance Society of the United States v. Murphy,* 153 Pa.Commonwealth Ct. 338, 621 A.2d 1078 (1993).

Garofolo relies on *Commonwealth v. Budd Co.,* 379 Pa. 159, 108 A.2d 563 (1954), *appeal dismissed,* 349 U.S. 935 (1955) to support its position that Act 22 violates the uniformity requirement of the Pennsylvania Constitution, comparing Garofolo's situation to that of the taxpayers there. In *Budd,* the taxpayers were Pennsylvania corporations which had sustained net operating losses in 1946. Under the Pennsylvania tax law in effect at the time they suffered their losses, corporate taxpayers could carry-back their net operating losses to either of the two years immediately preceding the year of the incurred losses. In May 1947, the Pennsylvania legislature amended the tax act and disallowed 1946 losses as a deduction for any prior fiscal or calendar year. However, under the amendment, corporations that had their taxes resettled prior to the date of the legislative enactment, May 14,

1947,[6] could apply their 1946 losses to prior tax years, whereas corporations, such as Budd, whose taxes had not been resettled prior to that date, were denied the use of the loss carry-back provision.

Budd and other affected corporate taxpayers challenged the 1947 amendment as violative of the uniformity clause of the Pennsylvania Constitution in that it arbitrarily and unreasonably discriminated against the taxpayers in its terms and operation.[7] Our Supreme Court found merit in the taxpayers' constitutional challenges. The Court reasoned that corporations of the same class, all of which had suffered a net operating loss in 1946, were benefited by or deprived of the use of the loss carry-back provision depending *solely* upon "whether a resettlement of carry-back losses for 1946 and prior years was made by the fiscal or administrative officers of the Commonwealth prior or subsequent to May 14, 1947." *Budd,* 379 Pa. at 170, 108 A.2d at 568. The Court determined that the 1947 enactment violated the uniformity provisions of the Pennsylvania Constitution because it did not apply the tax burden with substantial equality to all members of the same class; instead, it produced "arbitrary, unjust and unreasonably discriminatory results." *Id.*

I find *Budd's* uniformity analysis helpful in resolving the issue presented here. Garofolo and similarly situated corporations face discrimination comparable to that faced by the taxpayers in *Budd* because in both cases corporate taxpayers experiencing losses in certain years (1946 in *Budd* and 1988 and 1989 here) were treated unequally.[8] The tax laws in

**6.** That date was apparently unrelated to any tax consideration such as the taxable year or the due date for returns or amendments.

**7.** The *Budd* petitioners also contended that the amendment was violative of due process protections under both the United States and Pennsylvania constitutions against impermissible retroactive taxation. I would not reach this issue.

**8.** The majority questions the applicability and vitality of *Budd,* stating that *Budd* was a plurality decision. I am not swayed by this statement; we are certainly free to rely on the rationale of a plurality decision, although not compelled to do so. Moreover, in making this statement, the majority cites *Fisher Controls Co., Inc. v. Commonwealth,* 476 Pa. 119, 381 A.2d 1253 (1977), footnote 6 of which states that *Fisher* does

effect at the time Garofolo incurred its net operating losses created the expectation that Garofolo would be able to use its losses as a carryover to offset taxable income in any of three following years.[9]  Similarly, when Budd suffered a loss in 1946, it expected to be able to amend its tax return for two years immediately preceding the loss year.   Just as Budd found that it was deprived of the tax benefit because its carryback losses had not been resettled prior to May 14, 1947, Garofolo found that it was deprived of a tax benefit because it

not raise the retroactivity issue discussed in *Budd* and notes, only parenthetically, that *Budd* was a plurality decision.

The majority finds *Budd's* retroactivity analysis clearly distinguishable from the present case;  however, because I find *Budd's* uniformity analysis more applicable here, I would not reach the question of retroactivity.   I would note, however, that, as in *Budd*, the retroactive repeal of the net operating loss carryforward provision substantially and adversely affects particular Pennsylvania businesses which relied on the accrued tax benefits.   For example, Pennsylvania S corporations must elect their tax status by March 15 of the year in question to receive S corporation treatment under Pennsylvania tax law.   Therefore, many S corporations chose to pay their 1991 taxes at the regular corporate rate of 12.25 percent to take advantage of accrued net operating losses, only to find that this tax benefit was denied them with the enactment of Act 22 after the March 15 date.   Had they known that they would not have been entitled to the tax benefit, these corporations would have opted to pay taxes for 1991 at the personal income tax rate of only 2.6 percent.

The majority also relies on *Commonwealth v. Rohm and Haas Co.*, 28 Pa.Commonwealth Ct. 430, 368 A.2d 909 (1977), *aff'd*, 478 Pa. 164, 386 A.2d 491, *appeal dismissed*, 439 U.S. 805 (1978), where the taxpayer made an election to treat foreign taxes as a credit on its federal income tax return rather than as a deduction.   This election caused the calculation of its net income for state purposes to be higher than it would have been had the taxpayer elected to deduct foreign taxes.   The Court rejected the taxpayer's claim that the Commonwealth's refusal to allow it to deduct foreign taxes on its state return resulted in a lack of uniformity.   In my opinion there is so little similarity between that case and the one presently before us that the majority's reliance is misplaced.

9.  Garofolo belongs to a class of corporate taxpayers who, having suffered net losses, had a legal expectation of utilizing the tax benefit created by section 401(3)4. of the Code, i.e. the right to deduct those losses from any profits earned in the three years following the loss.   Net operating losses have been recognized as a business asset.   *See, e.g., In re Prudential Lines, Inc.*, 928 F.2d 565 (2d Cir.), *cert. denied, PSS S.S. Co., Inc. v. Official Committee of Unsecured Creditors*, 112 S.Ct. 82 (1991).

had not been able to use the loss carryover prior to the 1991 taxable year. Budd found that other corporations with 1946 losses received the tax benefit because they had used the loss carry-back prior to May 14, 1947. Garofolo found that other corporations with 1989 losses received a tax benefit because they had used the loss carryover prior to 1991.

Act 22 discriminates between corporate taxpayers with 1989 loss carryovers *solely* on the basis of whether the loss carryover had been used prior to the 1991 taxable year; two companies which had suffered losses in 1989 would be treated differently if one had used all of its loss before 1991, and the other, like Garofolo, had used only some of that loss. I believe that such discrimination between taxpayers of the same class (i.e., corporate taxpayers who incurred losses in 1989) results in a substantial inequality of tax burden in contravention of the uniformity provision of the Pennsylvania Constitution. *Budd; Aldine Apartments.*

Although the legislature has the power to suspend or repeal tax benefits such as the loss carryover deduction, the formula or method of computing a tax must not, in its operation or effect, produce arbitrary or unjust or unreasonably discriminatory results. *Amidon.* If it does, the uniformity provision of the constitution is violated. *Id.* Because some corporate taxpayers were able to deduct 1988 and 1989 net losses,[10] pursuant to the provisions of the Code, and others could not, I would conclude that Act 22, amending the Code to suspend the loss carryover deduction for 1991 and subsequent years, as it affects deduction of 1988 and 1989 net losses, results in unreasonably discriminatory treatment of corporate taxpayers within the same class in violation of the uniformity clause of the Pennsylvania Constitution.

Accordingly, I dissent. I would grant Garofolo's Motion for Summary Judgment on the limited basis that Act 22, as it

10. Because 1990 net losses could not be carried over and deducted prior to 1991, the year in which section 16 of Act 22 took effect, this non-uniformity problem does not exist with regard to suspension of the deduction for 1990 net losses.

affects deduction of 1988 and 1989 net losses, violates constitutional uniformity requirements.