657 A.2d 1252

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,**

**v.**

**UNIVERSAL UNDERWRITERS INSURANCE COMPANY.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**

**v.**

**UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued April 5, 1994.

Filed March 22, 1995.

Reargument or Reconsideration Denied June 1, 1995.

Robert A. Seiferth, Williamsport, for State Farm Mut.
Glenn A. Ricketti, Philadelphia, for Universal Underwriters.

Before ROWLEY, President Judge, and KELLY and POPOVICH, JJ.

ROWLEY, President Judge.

On October 14, 1988, a motor vehicle driven by Dollie Hill and owned by Kinley's Subaru, Inc., collided with a motor vehicle driven by Leo Lorson. Hill, whose own vehicle was being repaired by Kinley's Subaru, was an insured driver under a policy issued by State Farm Mutual Insurance Company ("State Farm"). Kinley's Subaru was insured under a policy issued by Universal Underwriters Insurance Company ("Universal"). State Farm defended Hill against actions brought by Lorson for damage to his vehicle and by his passenger, Pearl English, for personal injuries. The parties settled the actions for $300.00 and $17,000.00, respectively.

State Farm then filed the present action against Universal, requesting a declaratory judgment as to Universal's obligations to defend and indemnify Hill, as well as judgment against Universal in an amount equal to 10/11 of the cost of defending and settling the claims against Hill. Following discovery, both parties filed motions for summary judgment.

In an order entered February 19, 1993, the trial court partially granted State Farm's motion for summary judgment, stating that State Farm "will be awarded fifty (50%) percent of the sum expended in defending and settling the actions brought by Leo E. Lorson and Pearl E. English." Both parties have filed timely appeals from the order.

### APPEAL OF UNIVERSAL AT NO. 219 HARRISBURG 1993

Universal states the first of its two issues as follows:

1. Did the [trial] Court err in determining that the operator of the vehicle, Ms. Hill, was an "insured" of the Defendant Universal ... in light of the definitions provided in their policy of insurance with Kinley Subaru[?]

Brief for Appellant Universal at 1. The remaining issues of both parties concern the allocation of the costs of coverage between the two insurers. Because it will not be necessary to

address those issues if we determine that the trial court erred in finding that Ms. Hill was an insured under the Universal policy, we turn first to that question.

 Preliminarily, we note that the interpretation of an insurance policy is a question of law for the court. *Patterson v. Reliance Insurance Companies,* 332 Pa.Super. 592, 596, 481 A.2d 947, 949 (1984). Whether a particular loss is within the coverage of an insurance policy is such a question of law and may be decided on a motion for summary judgment in a declaratory judgment action. *Equibank v. State Farm Mutual Automobile Insurance Company,* 426 Pa.Super. 354, 359, 626 A.2d 1243, 1244 (1993), *appeal denied,* 536 Pa. 642, 639 A.2d 28 (1994) (quoting *Neil v. Allstate Insurance Company,* 379 Pa.Super. 299, 302, 549 A.2d 1304, 1305 (1988), *appeal denied,* 522 Pa. 578, 559 A.2d 38, 39 (1989)). Accordingly, we will apply our well-settled standard of review in summary judgment matters. *See Aetna Casualty and Surety Company v. Roe,* 437 Pa.Super. 414, 418–20, 650 A.2d 94, 97 (1994); *Equibank v. State Farm, supra,* 426 Pa.Super. 354, 626 A.2d 1243; *Neil v. Allstate, supra,* 379 Pa.Super. 299, 549 A.2d 1304; *Washington Federal Savings and Loan Association v. Stein,* 357 Pa.Super. 286, 288–89, 515 A.2d 980, 981 (1986). We will not reverse the trial court's order granting summary judgment absent an error of law or clear abuse of discretion. *Aetna v. Roe, supra,* 437 Pa.Super. 414, 650 A.2d 94; *Danko v. Erie Insurance Exchange,* 428 Pa.Super. 223, 226, 630 A.2d 1219, 1221 (1993), *appeal granted,* 536 Pa. 642, 639 A.2d 27 (1994) (citing *Denlinger, Inc. v. Dendler,* 415 Pa.Super. 164, 608 A.2d 1061 (1992)).

We begin our analysis by reviewing the portions of the Universal policy on which the trial court based its finding. In the "Garage" section of the policy, Universal states that

WE will pay all sums the INSURED legally must pay as damages ... because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD.

Universal Policy at 32. "Auto hazard" is defined in the same section as follows:

"AUTO HAZARD" means the ownership, maintenance, or use of any AUTO YOU own or which is in YOUR care, custody or control and:

(1) used for the purpose of GARAGE OPERATIONS or

(2) used principally in GARAGE OPERATIONS with occasional use for other business or non-business purposes or

(3) furnished for the use of any person or organization.

Universal Policy at 32. Also provided is an explanation of "who is an insured":

With respect to the AUTO HAZARD:

1. YOU;

2. Any of YOUR partners, paid employees, directors, stockholders, executive officers, a member of their household or a member of YOUR household, while using an AUTO covered by this Coverage Part, or when legally responsible for its use. The actual use of the AUTO must be by YOU or within the scope of YOUR permission;

3. Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission.

Universal Policy at 33.

Universal proffers several theories to support its claim that the trial court's decision was an error of law. First, Universal argues that Ms. Hill was not a person "required by law to be an INSURED" because she does not fall within the definition of the term "insured" that is provided in § 1702 of the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. § 1701 et seq. That definition reads as follows:

"Insured." Any of the following:

(1) An individual identified by name as an insured in a policy of motor vehicle liability insurance.

(2) If residing in the household of the named insured:

(i) a spouse or other relative of the named insured; or

(ii) a minor in the custody of either the named insured or relative of the named insured.

75 Pa.C.S. § 1702.

It is beyond dispute that Ms. Hill was not an insured as that term is defined in § 1702. Nevertheless, our analysis does not end there. Section 1702 explains that "[t]he following words and phrases **when used in this chapter** [i.e., the MVFRL] shall have the meanings given to them in this section unless the context clearly indicates otherwise . . ." (emphasis added). The statute does not indicate that the definition of "insured" offered there is also meant to serve as the explanation of who is "required by law to be an insured" under a policy such as that issued by Universal in this case. Conversely, the Universal policy does not indicate that who is "required by law to be an insured" is to be determined by reference to § 1702 of the MVFRL. In fact, the persons denoted as insureds in § 1702 (named insureds and relatives residing in their households) are essentially included in the definition given in the auto hazard section of the Universal policy. If the phrase "[a]ny other person . . . required by law to be an insured" is to have any meaning at all, therefore, it cannot be limited to those persons specified in § 1702.

As support for its argument, Universal cites this Court's opinion in *Stout v. Universal Underwriters Insurance Company*, 320 Pa.Super. 240, 467 A.2d 18 (1983). In that case, appellants sought to recover damages for injuries suffered in 1970 when the automobile in which they were traveling was struck by an automobile driven by one Clyde Jones and owned by Hamilton Buick & Pontiac, Inc., which had lent the automobile to Jones while his mother's vehicle was being repaired. Appellants had sued Jones and obtained verdicts in their favor. When the judgments entered against Jones went unpaid, however, appellants filed an action against Universal, Hamilton Buick's insurer. Appellants asserted that the "garage liability" portion of the Universal policy extended coverage to Jones. This Court rejected their argument, concluding that Jones was not an insured under the policy but rather that the policy covered the hazard to the insured (i.e., Hamilton

Buick) of renting a vehicle to a customer whose car was being repaired.

Universal suggests that we apply the reasoning used in that case to the facts of the present one. We decline to do so. We note, first, that the opinion is a plurality, one member of the three-member panel having concurred in the result and a second having taken no part in the case. Accordingly, the opinion is not binding upon us.

Moreover, *Stout* was not decided under the MVFRL but under the Motor Vehicle Safety Responsibility Act, 75 P.S. § 1277.1 et seq. (repealed). The Act did not require compulsory insurance on the part of the owner or operator of a motor vehicle, but instead aimed to ensure financial responsibility after an accident had occurred. Consequently, the automobile hazard section of the Universal policy at issue did not refer to other persons "required by law to be insured." We conclude, therefore, that this Court's decision in *Stout* does not resolve the issue before us.

Finally, Universal directs us to the following provision in the garage portion (Part 500) of the policy:

EXCLUSIONS—This insurance does not apply to:

. . . . .

(h) INJURY arising out of the ownership, maintenance, repair, use, loading or unloading of any[ ]
(1) AUTO, while:

. . . . .

(iii) leased or rented by YOU to others, except to:

. . . . .

(2) YOUR customers for a term of two months or less when it temporarily replaces the CUSTOMER'S AUTO. . . .

Universal Policy at 33–35. Without more, this provision indicates that coverage extends to injury arising out of the use of an automobile leased or rented by Kinley's Subaru to a customer as a replacement for the customer's vehicle for a period of no longer than two months. Universal points, however, to another provision, Endorsement No. 054, "Cus-

tomer Rental Coverage Excluded," which indicates that sub-paragraph (2), quoted above, is deleted from Exclusion (h)(1)(iii). *See* Universal Policy at 80. Therefore, Universal argues, the policy does *not* provide coverage for injury arising out of the use of an automobile leased or rented to a customer such as Hill.

At the beginning of the "Endorsements Applicable" section of the policy, within which Endorsement No. 054 appears, is the following language: "In consideration of the premium for this policy, each of the following endorsements apply **when the number of the endorsement is shown in the declarations.**" Universal Policy at 60 (emphasis added). The declarations pages for the policy period June 1, 1988 to June 1, 1989, begin with the explanation that

THIS POLICY INSURES ONLY THOSE COVERAGES AND PROPERTY SHOWN IN THE DECLARATIONS MADE A PART OF THIS POLICY.

Universal Policy at 1–A. Endorsement No. 054 is not shown in the declarations. For that reason, the trial court concluded that it is not applicable.

Universal attempts to overcome the effect of this omission by noting that Endorsement No. 054 is listed in the Table of Contents of the policy. Universal notes, in addition, that Ms. Hill did not sign a lease or rental contract or pay any money for the use of Kinley's vehicle. Therefore, Universal argues, Ms. Hill's use of the vehicle does not fall within the scope of Exclusion (h)(1)(iii), rendering irrelevant the trial court's finding that Endorsement No. 054 is inapplicable.

To resolve the dispute as to Ms. Hill's status under the Universal policy, we rely upon fundamental principles governing the interpretation of insurance contracts. One such principle is that if the language of a policy prepared by an insurer is ambiguous, obscure, uncertain, or susceptible to more than one construction, we will interpret it most strongly against the insurer and accept the construction most favorable to the insured. *Musisko v. Equitable Life Assurance Society,* 344 Pa.Super. 101, 106, 496 A.2d 28, 31 (1985). Where, as

here, the dispute is between two insurers, we will consider each policy from the perspective of the insured and construe each policy most strongly against the insurer. *Erie Insurance Exchange v. Transamerica Insurance Company,* 516 Pa. 574, 580, 533 A.2d 1363, 1366–67 (1987), *cited in Pennsylvania National Mutual Casualty Insurance Company v. Traveler's Insurance Company,* 405 Pa.Super. 149, 592 A.2d 51 (1991), *appeal denied,* 529 Pa. 622, 600 A.2d 538 (1991). A policy provision is ambiguous if reasonably intelligent persons, considering it in the context of the policy as a whole, would honestly differ as to its meaning. *Patterson v. Reliance,* 332 Pa.Super. at 596, 481 A.2d at 949. Finally, we are mindful that in close or doubtful cases under the MVFRL, we are to resolve the meaning of insurance policy provisions in favor of coverage for the insured. *Panichelli v. Liberty Mutual Insurance Company,* 435 Pa.Super. 290, 296 n. 3, 645 A.2d 865, 867 n. 3 (1994); *Danko v. Erie,* 428 Pa.Super. at 229, 630 A.2d at 1222.

■ State Farm asserts, inter alia, that the "required by law to be an INSURED" provision of the Universal policy is ambiguous. Having considered the provision in the context of the entire policy, we agree. As noted earlier, we cannot simply insert the MVFRL's definition of "insured" into the phrase in question and thereby know who is an insured under the policy. Exclusion (h)(1)(iii)(2) in Part 500 of the policy does not enlighten us in this regard. The exclusion states that the garage insurance does not apply to injury arising out of the use of an automobile leased or rented by McKinley's Subaru to others, unless the "other" is a customer using the automobile for two months or less as a temporary replacement for his or her own automobile. As State Farm notes, McKinley's did not lease or rent the vehicle to Ms. Hill, but instead allowed her to use it without charge as a "loaner." Therefore, regardless of whether Endorsement No. 054 operates to delete sub-paragraph (2) (i.e., the exception for "YOUR customers ...") from the exclusion, it is at least arguable that the exclusion does not apply to Ms. Hill.

Accordingly, we conclude that reasonably intelligent persons can differ as to the meaning of the provisions in the Universal policy which purport to determine Ms. Hill's status under the policy. That being the case, we interpret the policy against its drafter, Universal, and in favor of coverage for Ms. Hill.

In its second issue, Universal challenges the trial court's decision to apply to this case the principle that "[w]here two policies of insurance cover a single insured for the same risk and each policy seeks avoidance of coverage either by way of an excess escape clause [sic], such clauses are of no effect and both policies are primary policies of insurance." Trial Court Opinion at 5–6. Finding that each insurance policy contained such a clause, the trial court prorated the liability between the two policies. Universal argues that while the State Farm policy does in fact contain an unenforceable "escape" clause, the Universal policy contains an "excess" clause which can be and should have been enforced. The effect of Universal's argument, if successful, would be to place upon State Farm the entire burden of liability.

█ The distinction between "excess" and "escape" clauses is as follows:

An "excess" clause purports to provide protection to the insured in addition to other coverage which might be available to him. Since it does not provide that supplemental protection until the other policy has been exhausted, it is "excess" to the other coverage. An "escape" clause provides that the company invoking it is relieved from any obligation to the insured if other coverage is available. Because the company may "escape" responsibility under its policy if that clause is given effect, not unexpectedly, "escape" clauses are generally in disfavor with the courts.

*Connecticut Indemnity Company v. Cordasco*, 369 Pa.Super. 439, 443–44, 535 A.2d 631, 633 (1987) (quoting *Insurance Company of North America (INA) v. Continental Casualty Company*, 575 F.2d 1070 (3d Cir.1978)). *Connecticut Indemnity v. Cordasco*, like the case at bar, involved a garage customer who became involved in an accident while driving a

"loaner." The State Farm policy issued to the driver provided that its coverage did not apply in a situation where its insured was driving a vehicle owned by a person or organization in a car business and where the insured or the vehicle owner had any other liability coverage. This Court held the provision in question to be an unenforceable escape clause, noting that "[b]y its very terms, coverage would be available to [the driver] under the State Farm policy if he was not covered under the Connecticut garage policy issued to [the garage]." *Id.* 569 Pa.Super. at 444, 535 A.2d at 633.

 The pertinent Universal policy provision reads as follows:

THE MOST WE WILL PAY—Regardless of the number of INSUREDS or AUTOS insured by this Coverage Part, persons or organizations who sustain INJURY, claims made or suits brought, the most WE will pay is:

1. With respect to GARAGE OPERATIONS and AUTO HAZARD, the limit shown in the declarations for any one OCCURRENCE.

With respect to persons or organizations required by law to be an INSURED, the most WE will pay is that portion of such limit needed to comply with the minimum limits provision of such law in the jurisdiction where the OCCURRENCE took place. When there is other insurance applicable, WE will pay only the amount needed to comply with such minimum limits after such other insurance has been exhausted.

Universal Policy at 36. Because the clause does not allow Universal to avoid coverage entirely in any situation in which other insurance applies, Universal argues that this provision is an excess rather than an escape clause.

Nevertheless, case law indicates otherwise. In *Automobile Underwriters, Inc. v. Fireman's Fund Insurance Companies,* 874 F.2d 188 (1989), the Third Circuit Court of Appeals analyzed the "other insurance" clause of a Fireman's Fund policy which provided coverage to a car dealership. The clause provided that if a customer driving a car owned by the

dealership had no other available insurance, he or she was insured under the Fireman's Fund policy up to the limits of the applicable financial responsibility law, and that if he or she had other available insurance for an amount less than the required minimum, he or she was insured under the Fireman's Fund policy only for the amount necessary to reach the required minimum. The customer in question had other insurance which exceeded the statutory minimum required by Pennsylvania. Concluding that such a "super-escape/reduced limits clause" should be construed as it applied to the facts of the case, rather than hypothetically, the Court of Appeals held that the clause at issue was an escape clause which should be stricken.

In *Fryer v. Allstate Insurance Company*, 392 Pa.Super. 418, 573 A.2d 225 (1990), this Court applied the reasoning of *Automobile Underwriters v. Fireman's Fund* to reach a similar result. In that case, Michele Fryer was involved in an accident while driving an automobile which had been loaned to her by the dealership, Verrena Buick–Olds, that was servicing her car. The insurance policy issued to Verrena by Harleysville Insurance Company included a clause providing that a customer using a covered automobile with Verrena's permission was an insured only for the amount needed to meet the statutory minimum if no other insurance, or inadequate insurance, was available. Fryer was an insured under her father's Allstate policy. This fact, the Court noted, relieved Harleysville of liability to Fryer. Accordingly, this Court concluded that "the provision at issue . . . falls within the classic definition of an unenforceable escape clause" and therefore that "the Harleysville policy provisions must be enforced as if the escape clause did not exist." *Id.* at 423, 573 A.2d at 228.

We are presented with a similar situation in the present case. If the pertinent clause in the Universal policy is applied to the facts of this case, the effect is to allow Universal to "escape" any liability. We hold, therefore, that the trial court did not abuse its discretion in finding the clause to be an unenforceable escape clause.

## APPEAL OF STATE FARM AT
## NO. 218 HARRISBURG 1993

The trial court apportioned the liability of the two insurers by applying the "minority rule," i.e., "prorat[ing] the loss equally up to the limits of the lower policy, with any remaining portion of the loss being paid from the larger policy up to its limits." Trial Court Opinion at 6. The trial court chose this method after concluding that there was no controlling Pennsylvania law on the subject. The result in this case, where the total loss of $21,679.78 is less than the limits of either policy, was to require each insurer to contribute an equal amount.

In its first issue, State Farm maintains that the trial court abused its discretion in failing to apply the "majority rule" or "policy limits" method of proration, i.e., "prorat[ing] ... coverage according to the ratio of the coverages provided by each [policy] for the same loss to the total coverage provided by all policies...." Brief for Cross–Appellant at 9. According to State Farm, the policy limits method has been the rule in Pennsylvania for more than one hundred years.

In support of its argument, State Farm cites, inter alia, this Court's opinion in *Fireman's Fund Insurance Company v. Nationwide Mutual Insurance Company,* 317 Pa.Super. 497, 464 A.2d 431 (1983). In that case, the claimant, riding as a passenger, was seriously injured in a one-vehicle accident. The claimant did not own an automobile, and he was not a named insured on any policy. He did, however, reside with two persons who were named insureds: his father, on a policy covering two vehicles, issued by Fireman's; and his brother, on a policy covering one vehicle, issued by Nationwide. The claimant asserted a claim against Fireman's for basic loss benefits under § 204(b) of the No–Fault Act, 40 P.S. § 1009.204(b) (repealed). Fireman's paid the claim and then sought contribution pro rata from Nationwide for one-half of the total claim. Nationwide paid only one-third of the total amount, asserting that apportionment should be based on the number of vehicles and the difference in premiums. The trial court agreed and entered summary judgment for Nationwide.

■■■ On appeal, this Court concluded, for reasons not pertinent here, that neither the "premium method" nor the "involved motor vehicles" method of proration should be applied. The Court set forth the following analysis:

Resolution of this case depends ... upon the language of the policies in question and an examination of the law of insurance prior to the enactment of the No–Fault Act and the effect, if any, passage of that Act may have had upon that law. In *Vrabel v. Scholler,* 369 Pa. 235, 242–243, 85 A.2d 858, 861 (1952) (*Vrabel I*), *appeal after remand,* 372 Pa. 578, 94 A.2d 748 (1953) (*Vrabel II*), the Pennsylvania Supreme Court stated:

In the absence of contrary modifying provisions in a statute, the liability of an insurer and the extent of the loss under a policy of automobile liability insurance must be determined, measured, and limited *by the terms of the contract.* (Emphasis supplied.)

Where the insurance policies did not themselves expressly specify the method of proration, the Supreme Court held that liability was to be apportioned under the so-called majority rule or the "policy limits" method of proration.

*Id.* 317 Pa.Super. at 510, 464 A.2d at 438 (additional citations omitted). In other words, the court is instructed to look first at the language of the applicable statute; absent any controlling statutory provisions, the court is to prorate liability as specified in the policies; absent any controlling policy provisions, the court is to apply the majority rule or policy limits method of proration.

Accordingly, this Court first examined the language and legislative history of the No–Fault Act and determined that the Act was not a "modifying statute," i.e., in enacting the Act, the legislature had not intended to change the law with regard to the proration of liability. Because essential portions of the insurance policies were not in the record, this Court was unable to complete the next step of the analysis, i.e., prorating liability as specified in the policies. The Court therefore reversed the order granting summary judgment in favor of

Nationwide and remanded for further proceedings, noting the following:

> If there is a conflict between the language of the policies, that conflict should first be resolved in the trial court by reference to the language contained in the policies. If the clauses are irreconcilable, they should be disregarded as mutually repugnant and the common law rule of *Vrabel I* and *Vrabel II* applied, i.e.[,] the policy-limits ratio. If that common law rule is to be altered, it should be done only after careful consideration and reflection, with due regard for the uniformity, coherence, simplicity and certainty of the No–Fault system of insurance desired by the legislature.

*Id.* 317 Pa.Super. at 512, 464 A.2d at 439.

■ It is beyond dispute that *Fireman's Fund v. Nationwide* is not directly on point. In the present case it is the MVFRL, not the No–Fault Act, which governs; and the policy provisions at issue concern liability insurance, not basic loss, first-party benefits. Nevertheless, when presented with an issue for which there is no clear precedent, our role as an intermediate appellate court is to resolve the issue as we predict our Supreme Court would do. Our opinion in *Fireman's Fund v. Nationwide*, relying as it does on Supreme Court case law, offers some guidance as to how the Supreme Court would view the matter. If, as the trial court thought, the "minority view" method of proration is the better of the two, it is for the Supreme Court to say so.

■ Having examined the MVFRL, we conclude that it is not a "modifying statute" with regard to the meaning of "pro rata." We note also that the State Farm policy provides for proration of coverage by the policy limits method. State Farm asserts that the Universal policy does not address the question of proration and that, in any event, it does not matter whether the Universal policy has a conflicting provision or none at all: in either case, pursuant to *Fireman's Fund v. Nationwide*, as quoted above, the policy limits method should have been applied. We agree.

Having reached this conclusion, we decline to address State Farm's remaining issue, namely, whether the defense costs should be allocated in accordance with the ratio by which indemnification is prorated. Instead, we vacate the order granting partial summary judgment and remand the case to the trial court for further proceedings consistent with this opinion.

Order vacated. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

POPOVICH, J., concurs in the result.