AMERICAN CASUALTY COMPANY OF READING, PA., Petitioner,

v.

PHICO INSURANCE COMPANY and Commonwealth of Pennsylvania, Medical Professional Liability Catastrophe Loss Fund, Joseph Pulcine, Jr., Director and Sharon Dirienzo and David Richard and Suzanne Richard, his wife as parents and natural guardians of Christopher Richard and David Richard and Suzanne Richard in their own right, Respondents.

Commonwealth Court of Pennsylvania.

Argued May 9, 1995.

Decided July 21, 1995.

K. Charles Gudenas, for petitioner.

David E. Sandel, Jr., for respondents.

Before McGINLEY and SMITH, JJ., and LORD, Senior Judge.

McGINLEY, Judge.

This present case is on remand from the Pennsylvania Supreme Court so that Phico Insurance Company (Phico) and American Casualty Company (American Casualty) can contest whether, under Phico's excess policy and American Casualty's excess policy, any remaining liability should be pro-rated or equally shared.

The facts as recounted in this Court's opinion *American Casualty Company v. Phico Insurance Company*, 145 Pa.Commonwealth Ct. 184, 602 A.2d 904 (1992), *reversed in part*, 537 Pa. 295, 643 A.2d 91 (1991) are as follows:

American Casualty issued to Sharon DiRienzo (DiRienzo), a delivery room nurse, a "Professional Nurse's Liability Policy" (American Casualty's policy) for the period from February 6, 1987, through February 6, 1988. American Casualty's policy provides professional and personal liability coverage for the nursing profession.[1] In its policy American Casualty agrees to "pay all amounts up to the limits of liability [$1,000,000] which you [DiRienzo] become legally obligated to pay as a result of injury or damage." American Casualty's policy, Appendix to Memorandum of Law of American Casualty (Appendix), Exhibit C at 5. American Casualty's policy also provides that "[t]he injury or damage must be caused by ... a medical incident as a result of the supplying of or failure to supply professional services by you...." American Casualty's policy, Appendix, Exhibit C at 5. DiRienzo paid an annual premium of $58.00 in consideration for the insurance coverage.

Phico issued two policies of insurance to Bryn Mawr Hospital (Hospital), one a "Health Care Providers Comprehensive Liability Policy" (primary policy), and the other a "Health Care Providers Umbrella Policy" (excess policy), for the period of November 20, 1987, through January 20, 1988. The policies were extended by endorsement to February 1, 1988. Phico's primary policy provides a wide range of liability insurance coverage. Coverage C, "Institutional Professional Liability," includes up to $200,000 of coverage to the Hospital and its employes for "any act or omissions in the furnishing of professional health care services." Phico's primary policy, Appendix, Exhibit D at 11. Phico's excess policy provides up to $10,000,000 of coverage to the Hospital and its employes for "any act or omission during the policy period in the furnishing of professional health care services including the furnishing of ... medication ... in connection with such services...." Phico's excess policy, Section VII–Definitions, Appendix, Exhibit E at 8. Phico's excess policy involves coverage "in excess of the greater of ... any other underlying insurance payable with respect to or collectible by the insured...." Phico's excess policy, Appendix, Exhibit E at 9.

By statute the Cat Fund [Pennsylvania Medical Professional Liability Catastrophe Loss Fund] provides the following coverage:

There is hereby created a contingency fund for the purpose of paying all awards, judgments and settlements for loss or damages against a health care provider entitled to participate in the fund as a consequence of any claim for professional liability brought against such health care provider as a defendant ... to the extent such health care providers' share exceeds his basic coverage insurance....

Section 701(d) of the Health Care Services Malpractice Act (Act).[2] "The limit of liability of the fund shall be $1,000,000 for each occurrence for each health care provider and $3,000,000 per annual aggregate for each health care provider." Section 701(d) of the Act, 40 P.S. § 1301.701(d).

On November 28, 1989, American Casualty filed a petition seeking a declaratory judgment "[i]nterpreting the priorities of the insurance policies issued by the parties" as a result of an underlying civil action filed in the Court of Common Pleas of Montgomery County at Docket No. 89–17897.[3] Petition for Declaratory Judgment, November 28, 1989, (Petition). American Casualty alleges at Count I that the American Casualty policy involves only excess insurance for DiRienzo; that Phico provides primary insurance "for liability arising out of any 'medical incident' and that term is defined to include the rendering or failure to render professional services"; that "[t]he Phico's Primary Policy states in its 'other insurance' clause that it provides primary insurance"; that Phico issued another policy to the Hospital providing "excess insurance to any professional employee of the named insured for liability arising

out of any 'medical incident'"; that the "American Casualty policy and the Phico Excess Policy provide coverage for Di-Rienzo in excess of the amounts collectible under the Phico Primary Policy and the Cat Fund"; and that "American Casualty's and Phico's contributions should be apportioned according to the respective limits of liability stated in those policies." Petition, paragraphs 12, 15, 16, 17, 18 and 24

At Count II American Casualty alleges that DiRienzo is a "health care provider" as defined in Section 103 of the Act, 40 P.S. 1301.103; that pursuant to Section 705(a) of the Act, 40 P.S. § 1301.705(a) "an insurer issuing a professional liability policy on an excess basis is not liable for payment of any claim against a health care provider before the limits of liability of the Cat Fund have been exhausted"; that "the Cat Fund must provide ... the benefits required by the Act up to $1,000,000.00"; and that "only in the event the coverage owed DiRienzo by Phico under its Primary Policy and by the Cat Fund were inadequate ... American Casualty and Phico, under its Excess Policy, would be required to indemnify her as excess co-insurers." Petition, paragraphs 31 and 32. American Casualty seeks declaratory relief on the theory that Phico's primary policy and the Cat Fund must provide coverage with respect to the claims asserted against Di-Rienzo and that American Casualty's policy provides excess coverage with any contribution apportioned to the limits of its policy.

On April 19, 1991, Phico and DiRienzo moved for summary judgment pursuant to Pa.R.C.P. No. 1035. Phico and DiRienzo contend that the pleadings and the uncontested facts establish that American Casualty's insurance policy does not provide excess coverage but provides primary or co-primary insurance. American Casualty filed a cross-motion for summary judgment alleging that its insurance coverage is in excess of Phico' insurance coverage and

that "the responsibility for the sums covered under both the Phico Excess Policy be prorated in accordance with the limits of those policies...." Answer of American Casualty Company to the Motion for Summary Judgment of Phico Insurance Company.

1. The personal liability coverage of the policy is not at issue in the present controversy.

2. Act of October 15, 1975, P.L. 390, *as amended*, 40 P.S. § 1301.701(d).

3. David and Suzanne Richards (Richards) parents and natural guardians of Christopher, a minor, filed a complaint against DiRienzo and the Hospital alleging that DiRienzo was negligent in providing nursing care and treatment to Suzanne during child birth, and to Christopher. The Richards allege that as a result of DiRienzo's negligence Christopher suffered severe and permanent brain damage.

*American Casualty Company,* 145 Pa.Commonwealth Ct. at 187–190, 602 A.2d at 905–906.[1]

In *American Casualty Company* this Court determined that "[u]nder the circumstances of the present case the 'other insurance' clause contained in the Phico policy is a 'pro rata' clause and means the Phico policy should be treated as providing primary coverage to DiRienzo" and that "[b]ecause the American Casualty policy contains an unqualified excess clause it must be interpreted as providing residual primary coverage." *Id.* at 196, 602 A.2d at 909. This Court ordered: 1) that Phico's primary policy pay the first $200,000 of indemnity expense; 2) that American Casualty, the residual primary insurer, then pay the next $1,000,000 of indemnity expense; 3) that the Cat Fund pay up to $1,000,000 as excess coverage after the exhaustion of Phico's $200,000 policy limit and American Casualty's $1,000,000 policy limit; and 4) that after exhaustion of these policy limits Phico's $10,000,000 excess policy limit is then triggered.

On appeal the Supreme Court reversed in part, concluding that "[m]oreover, under the crystal clear language of the American Casu-

---

1. The Cat Fund also filed an application for summary relief and American Casualty filed a cross-application for summary relief. This Court granted the Cat Fund's application, concluding that DiRienzo was not a "health care provider" pursuant to Section 103 of the Act, 40 P.S. § 1301.103 and denied American Casualty's cross-application. The Cat Fund is not a party in the present matter.

alty's policy's 'other insurance' clause ... it is hard to see how that policy can be construed as anything but an excess policy" and that "'if you have other insurance which applies to the loss, the other insurance must pay first' ... [t]his is an excess insurance clause...." *American Casualty Company,* 537 Pa. at 302–03, 643 A.2d at 95. The Supreme Court concluded that "in the instant case, the first $200,000.00 of liability must be borne by Phico's *primary* policy, and next the CAT Fund must kick in for its share ... [o]nly then do the excess policies of American Casualty and PHICO bear liability...." (emphasis in original). *Id.* at 303, 643 A.2d at 95. Although the Supreme Court stated that "liability should be prorated in accordance with the pro-ration clause in PHICO's excess policy", the Supreme Court noted in a footnote that the parties failed to clarify in the briefs whether excess liability under the respective excess policies should be prorated. *Id.* at 303, 643 A.2d at 95–96.

On remand to this Court Phico contends that any liability in excess of the $1,200,000 must be apportioned equally between the concurrent insurers. Phico asserts that prorating the loss equally up to the limits of American Casualty's lower policy limit of $1,000,000 (maximum loss approach) has been widely accepted by courts in other jurisdictions [2] as well as in Pennsylvania [3], although it is the minority rule across the nation.

Recently, our Pennsylvania Superior Court has addressed the issue of whether excess insurance coverage must be apportioned equally or prorated between concurrent insurers.[4] In *State Farm Mutual Automobile Insurance Company v. Universal Underwriters Insurance Company,* —— Pa.Superior Ct. ——, 657 A.2d 1252 (1995) Dollie Hill (Hill) was operating a vehicle owned by Kinley's Subaru, Inc. (Kinley) when she collided with a vehicle driven by Leo Lorson (Lorson).[5] Hill was insured under a policy issued by State Farm Mutual Automobile Insurance Company (State Farm) and Kinley was insured under a policy issued by Universal Underwriters Insurance Company (Universal). "State Farm defended Hill against actions brought by Lorson for damage to his vehicle and by his passenger, Pearl English, for personal injuries." *State Farm,* —— Pa.Superior Ct. at ——, 657 A.2d at 1254. The parties settled and State Farm sought a declaratory judgment that Universal was obligated to defend and indemnify Hill and that judgment be entered against Universal in the amount equal to ten elevenths of the costs of defending and settling the claims against Hill. After discovery State Farm and Universal filed motions for summary judgment. The Common Pleas Court of Lycoming County (common pleas court) granted State Farm's motion in part, awarding State Farm fifty percent "'of the sum expended in defending and settling the actions brought by Leo E. Lorson and Pearl E. English.'" *Id.* at ——, 657 A.2d at 1254. The common pleas court apportioned the liability of State Farm and Universal equally (minority rule) up to the limits of the lower policy and any remaining loss to be paid under the policy with the greater coverage up to the policy limits.

---

**2.** Phico cites the cases of *Cosmopolitan Mutual Insurance Company v. Continental Casualty Company,* 28 N.J. 554, 147 A.2d 529 (1959); and *Carriers Insurance Company v. American Policyholders' Insurance Company,* 404 A.2d 216 (Me. 1979) where courts in other jurisdictions determined that apportionment on an equal basis was fair and equitable.

**3.** Phico also cites *Continental Cas. Co. v. Aetna Casualty & Surety Co.,* 33 D. & C.2d 293, Allegheny County C.P.1963; *Horace Mann Ins. v. CNA Ins. Co.,* 23 D. & C.3d 433, Somerset C.P.1982; and *Jett v. Hill,* 10 D. & C.3d 734 Philadelphia C.P.1978, instances where Pennsylvania trial

courts applied the equal share apportionment approach between two insurers.

**4.** In the present controversy, the application of the maximum loss approach would require Phico and American Casualty to equally pay dollar for dollar up to American Casualty's excess policy limit of $1,000,000. The application of the majority rule (policy limits) method would require that the apportionment of loss be prorated and American Casualty would pay one dollar for every ten dollars paid by Phico.

**5.** Hill's vehicle was being repaired by Kinley.

On appeal[6] the Superior Court reviewed the "minority rule" and the " 'majority rule' or 'policy limits' method of proration, i.e., 'prorating ... coverage according to the ratio of the coverages provided by each [policy] for the same loss to the total coverage provided by all policies....' " *Id.* at ——, 657 A.2d at 1259, *quoting* Brief for Cross–Appellant State Farm at 9. In *State Farm* the Superior Court revisited its prior decision in *Fireman's Fund Insurance Company v. Nationwide Mutual Insurance Company,* 317 Pa.Superior Ct. 497, 464 A.2d 431 (1983) where it stated:

> Where the insurance policies did not themselves expressly specify the method of proration, the Supreme Court held that liability was to be apportioned under the so-called majority rule or the 'policy limits' method of proration. Id. at 510, 464 A.2d at 438 (additional citations omitted).

In other words, the court is instructed to look first at the language of the applicable statute; absent any controlling statutory provisions, the court is to prorate liability as specified in the policies; absent any controlling policy provisions, the court is to apply the majority rule or policy limits method of proration.

Accordingly, this Court first examined the language and legislative history of the No–Fault Act and determined that the Act was not a 'modifying statute,' i.e., in enacting the Act, the legislature had not intended to change the law with regard to the proration of liability. Because essential portions of the insurance policies were not in the record, this Court was unable to complete the next step of the analysis, i.e., prorating liability as specified in the policies. The Court therefore reversed the order granting summary judgment in favor of Nationwide and remanded for further proceedings noting the following:

> If there is a conflict between the language of the policies, that conflict should first be resolved in the trial court by reference to the language contained in the policies. If the clauses are irreconcilable, they should be disregarded as mutually repugnant and the common law rule of *Vrabel I* [*Vrabel v. Scholler,* 369 Pa. 235, 85 A.2d 858 (1952) ] and *Vrabel II* [*Vrabel v. Scholler,* 372 Pa. 578, 94 A.2d 748 (1953) ] applied, i.e. [,] the policy-limits ratio. If the common law rule is to be altered, it should be done only after careful consideration and reflection, with due regard for the uniformity, coherence, simplicity and certainty of the No–Fault system of insurance desired by the legislature. Id. at 512, 464 A.2d at 439.

*State Farm,* —— Pa.Superior Ct. at ——, 657 A.2d at 1260.

In *State Farm,* the Superior Court noted that the Motor Vehicle Financial Responsibility Law (MVFRL)[7] applied, not the No–Fault Act, and that the policy provisions at issue in *State Farm* concerned liability insurance, not first-party benefits. The Superior Court vacated the order of the common pleas court and remanded for further proceedings, concluding that the "majority rule" or "policy limits" method was applicable.

In *Hoffmaster v. Harleysville Insurance Company,* —— Pa.Superior Ct. ——, 657 A.2d 1274 (1995) the Superior Court addressed a similar issue of "whether apportionment of the loss [between two insurance companies] should be made equally or be prorated on the basis of the maximum coverage limit of each policy." *Hoffmaster,* at ——, 657 A.2d at 1275. In *Hoffmaster* Grace Hoffmaster (Hoffmaster) operated a vehicle owned by Blair Vilsack (Vilsack) when she collided with a second vehicle operated by Marlene Studeny (Studeny). Hoffmaster was insured by Keystone Insurance Company (Keystone) under a $50,000 liability insurance policy and Vilsack was insured by Harleysville Mutual Insurance Company (Harleysville) under a $100,000 liability insurance policy. Studeny filed an action against Hoffmaster and Vilsack. Without admitting any liability, Harleysville and Keystone settled

---

6. This the appeal of State Farm docketed at No. 218 Harrisburg.

7. 75 Pa.C.S. §§ 1701–1799.7.

Studeny's claim.[8] Keystone filed a declaratory judgment action against Harleysville seeking reimbursement for indemnity and the cost of defense. Harleysville and Keystone then filed cross-motions for summary judgment. The Common Pleas Court of Allegheny County denied Keystone's motion and granted summary judgment in favor of Harleysville, concluding that the "other insurance" clauses in each of the parties' respective insurance policies were mutually repugnant and therefore each insurer was to share equally in indemnity and defense costs.

On appeal the Superior Court initially determined that both insurers must share generally in the loss and addressed how that loss was to be apportioned. The Superior Court cited *Carriers Insurance Company* and quoted the Supreme Judicial Court of Maine:

> The majority rule would hardly encourage an insurer from increasing its coverage where it is aware that there is a lesser policy. It would increase the insurer's potential liability not only in the high-risk situation which additional premiums are presumably meant to recompense, but would have the untoward effect of increasing liability in the more likely to occur low-risk situation. Carried to its extreme, it would further increase the cost of additional insurance thereby reducing the likelihood that an insured choose such coverage. See *Dairyland Insurance Company v. Drum,* supra [193 Colo. 519, 568 P.2d 459 (1977)] (Carrigan, J., dissenting in part). The Court would be reluctant to adopt a rule which would seemingly have little social utility. (footnote omitted). [*Carriers Ins. Co.,* 404 A.2d at 221–222]

Herein, our court finds the aforementioned analysis of the Maine court to be more persuasive than that of courts clinging to the majority rule. Although neither rule is perfect, we are of the opinion that the maximum loss approach affords more equitable treatment to insurers.

Because the 'other insurance' clauses in the case at bar are irreconcilable, they are repugnant and each is rejected in toto. Without any guidance from our legislature on which method of apportionment applies to automobile liability insurance, we hold that Pennsylvania law requires application of the maximum loss method rather than the policy limit method. The court below properly ruled that each insurer was to share equally in the losses. (citations omitted).

*Hoffmaster,* at ——–——, 657 A.2d at 1281–82.

In the present controversy, Section VIII of Phico's insurance policy contains an "other insurance" clause that provides "[t]he insurance afforded under this policy shall apply as *excess* over other collectible insurance...." (emphasis added). Appendix of Exhibits at 198a. Section VII of American Casualty's insurance policy also contains an "other insurance" clause that provides "[i]f you have other insurance which applies to the loss, the other insurance must pay first ... [i]t is the intent of this policy to apply the amount of loss which is more than the limit of liability of the other insurance...." Appendix of Exhibits at 104a. Phico's and American Casualty's "other insurance" clauses are irreconcilable and are mutually repugnant. Because there is no controlling statutory provisions specifying the method of apportionment concerning professional liability insurance this Court adopts the Superior Court's rationale in *State Farm* that the "majority rule" or "policy limits" ratio applies. See *Vrabel I* and *Vrabel II.* As the Superior Court noted in *State Farm* "[i]f, as the trial court thought, the 'minority view' method of proration [prorating the loss equally] is the better of the two, it is for the Supreme Court to say so." *State Farm,* ——, 657 A.2d at 1260.

Accordingly, this Court directs that the apportionment of any liability loss between Phico and American Casualty in excess of the $1,200,000 ($200,000 paid under Phico's primary policy and $1,000,000 paid under the Cat Fund) shall be prorated on the basis of the maximum coverage limits of Phico and American Casualty's excess policies with Phico responsible for payment of ten-elevenths and American Casualty responsible for pay-

---

8. Harleysville paid $25,000 and Keystone paid $5,000 in order to settle the claim.

ment of one-eleventh of the total excess liability.

AND NOW, to wit, this 21st day of July, 1995, Phico Insurance Company and American Casualty Company are ordered to pay ten-elevenths and one-elevenths, respectively for any liability loss in excess of the $1,200,-000 and up to the maximum limits of its excess insurance policies.