The **MILTON S. HERSHEY MEDICAL CENTER OF the PENNSYLVANIA STATE UNIVERSITY, Plaintiff,**

v.

**COMMONWEALTH OF PENNSYLVANIA MEDICAL PROFESSIONAL LIABILITY CATASTROPHE LOSS FUND and John Reed, Director of Commonwealth of Pennsylvania Medical Professional Liability Catastrophe Loss Fund, Defendants.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2000.
Decided Nov. 21, 2000.

John A. Snyder, State College, for plaintiff.

Zella Smith Anderson, Harrisburg, for defendants.

BEFORE: McGINLEY, Judge, KELLEY, Judge, JIULIANTE, Senior Judge.

McGINLEY, Judge.

Before this Court, in our original jurisdiction, are the preliminary objections of the Pennsylvania Medical Professional Liability Catastrophe Loss Fund (CAT Fund), in the nature of a demurrer to the complaint filed by the Milton S. Hershey Medical Center of the Pennsylvania State

University (HMC). We overrule the preliminary objections.

This matter stems from two alleged incidents of medical malpractice.[1] The first incident concerns allegations of obstetrical malpractice whereby HMC and several of its physicians were named as defendants in a July 1996, complaint filed in the Court of Common Pleas of Dauphin County. The conduct occurred in January 1995 and involved allegations of inappropriate care rendered to the plaintiff mother that caused injuries to her plaintiff child.

Under the Health Care Services Malpractice Act[2] (Act 111), HMC was required to provide $200,000.00 of basic insurance to its providers, while the CAT Fund provided excess insurance of $1,000,000.00 per provider.[3] As the controversy proceeded, the attending OB/Gyn physician and HMC became the only remaining defendants. The physician was undisputedly the agent of HMC and HMC was vicariously liable. The CAT Fund authorized a $1.2 million settlement offer to the plaintiffs.

HMC tendered $400,000.00 on behalf of itself and the physician. The CAT Fund provided $1,000,000.00. The physician had excess coverage for the loss above $4,000,000.00. Therefore, HMC was uninsured for the $2.8 million beyond the first $1.2 million of insurance provided by the basic and excess coverage. The CAT Fund did not contribute toward settlement on behalf of HMC in light of HMC's vicarious liability and because all private excess coverage was not exhausted. As a result of the CAT Fund's refusal, HMC was required to pay the disputed amount to effectuate the settlement.

In April 1997, a second medical malpractice complaint was filed in the Court of Common Pleas of Dauphin County, this time against a pediatric cardiologist and HMC for alleged negligence occurring in September 1995 when a procedure was performed on the plaintiff's minor son. Here, the settlement value was in excess of $2.4 million. The CAT Fund again refused to contribute toward settlement on behalf of HMC because HMC was vicariously liable. Thus, HMC was forced to pay beyond the basic coverage in order to avoid prohibitive verdicts and delay damages.

On December 13, 1999, HMC filed a complaint[4] in this Court challenging the CAT Fund's policy that it is not obligated to contribute to settlement for HMC's vicarious liability until all layers of insurance available to the liable defendants are exhausted. HMC asserted in its complaint the following eight counts:

Count I—Declaratory Relief

Count II—Violation of Act 111

Count III—Indemnification

Count IV—Subrogation

Count V—Estoppel

Count VI—Quasi Contract

Count VII—Denial of Due Process and Equal Protection Rights

Count VIII—Bad Faith.

Throughout the complaint, HMC reiterates that it seeks "damages for an

---

1. To settle medical malpractice claims against HMC or its physicians, four "layers" of insurance coverage were available: 1) basic, 2) CAT Fund excess, 3) uninsured exposure, and 4) private excess. *See* Complaint, paragraph 4 at 2.

2. Act of October 15, 1975, P.L. 390, *as amended*, 40 P.S. §§ 1301.101–1301.1006.

3. "A primary purpose in establishing the CAT Fund was to assure the availability of reasonably priced professional liability insurance for all Pennsylvania health care providers and to

insure that persons injured as a result of medical malpractice may obtain prompt adjudication of their claims and receive compensation for those claims." *Meier v. Maleski*, 167 Pa.Cmwlth. 458, 648 A.2d 595, 598 n. 3 (1994) *citing* 40 P.S. § 1301.102.

4. Pursuant to Pa.R.A.P. 1502, "[t]he petition for review ... shall be the exclusive procedure for judicial review of a determination of a government unit." Therefore, HMC's complaint should be entitled "petition for review."

amount sufficient to compensate HMC for the CAT Fund's wrongful refusal to participate in the settlements of the Obstetrical Malpractice Action and the Pediatric Cardiology Action...." Additionally, HMC requests that this Court "enter a declaratory judgment that the CAT Fund may not, under ... Act 111 ... subordinate the priority of payment of vicarious liability claims." *See* Complaint at 23–24.

On January 24, 2000, the CAT Fund filed preliminary objections[5] alleging that HMC failed to state a cause of action against the CAT Fund in Counts II through VIII due to legal insufficiency of the pleading. Obviously, at this juncture, HMC does not shoulder the burden of proving its cause of action. The Court must evaluate whether the facts in the complaint "are sufficient to entitle it to relief." *Meier*, 648 A.2d at 606.[6]

### A.

The CAT Fund first contends that HMC failed to state a cause of action in Counts II, III, and IV because the CAT Fund's director properly determined that the CAT Fund need not pay twice for the negligence of a defendant physician. In Count II, HMC alleges that "[t]he CAT Fund's wrongful refusal to make settlement contributions on behalf of HMC ... was a violation of Act 111." Complaint, paragraph 69 at 13. Count III reflects that "[a]s a result of the CAT Fund's wrongful refusal ..., HMC was forced to pay the disputed amounts ... that should have been paid by the CAT Fund." Thus,

"HMC is entitled to indemnification as against the CAT Fund, and claim is made therefore." Complaint, Paragraphs 73 and 77, at 14 and 15. HMC alleges at Count IV that "[u]nder the doctrine of subrogation, the CAT Fund should be required to reimburse HMC for the settlement proceeds which were paid out in order to effectuate the reasonable settlements." Complaint, Paragraph 86 at 16.

The CAT Fund's premise is that HMC has no clear right to recovery under Act 111, based upon the language of the statute itself. The CAT Fund focuses upon the director's authority "to defend, litigate, settle, or compromise any claim payable by the fund," as set forth in Section 702(f). 40 P.S. § 1301.702(f). In addition, Section 702(h) states that "[n]othing in this act shall preclude the director from adjusting or paying for the adjustment of claims." 40 P.S. § 1301.702(h). The CAT Fund contends that these two sections authorize the director to determine whether the CAT Fund will pay toward the settlement of a claim, and if so, the amount. According to the CAT Fund, the director exercised such discretion when he denied CAT Fund payment based upon vicarious liability.

However, the payment and adjustment of claims are distinct from coverage issues between the CAT Fund and its covered providers. In *Ohio Casualty Group of Insurance Companies v. Argonaut Insurance Company*, 514 Pa. 430, 436, 525 A.2d 1195, 1198 (1987), our Pennsylvania Supreme Court stated:

---

5. When deciding preliminary objections,

> [W]e must accept as true all well-pleaded material allegations ... as well as all inferences reasonably deduced therefrom.... The court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion.... In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and, any doubt should be resolved by a refusal to sustain them. (Citations omitted).

*Meier*, 648 A.2d at 600.

6. We note that as long as the relationship between HMC and the CAT Fund is based on statute and not contract, the Commonwealth Court has jurisdiction. In *Nason v. Commonwealth*, 90 Pa.Cmwlth. 130, 494 A.2d 499 (1985), this Court determined that the Commonwealth Court and not the board of claims had jurisdiction over a petition for review against the State Treasurer and others, alleging that the Commonwealth, contrary to statutory duty, refused to fund the interim care of a mentally disabled resident.

The provisions of the Act are directed to resolving claims brought by injured patients against health care providers. In resolving these claims the Act anticipates the participation of the director and the Fund in the successful completion of such proceedings. The Act does not anticipate, nor was it intended to anticipate, claims brought directly against the Fund which are premised upon the alleged failure of the Fund to complete its statutory duty to pay its share.

Therefore, the director is authorized to evaluate the personal injury claims of malpractice claimants; not to determine who is covered and when such coverage applies.

Next, the CAT Fund addresses Section 705(a) within the context of vicariously liable hospital employees not entitled to coverage. Section 705(a) provides in pertinent part that:

> No insurer providing excess professional liability insurance to any health care provider eligible for coverage under the fund shall be liable for payment of any claim against a health care provider for any loss or damages except those in excess of the fund coverage limits.

40 P.S. § 1301.705(a). Moreover, the CAT Fund maintains that the Pennsylvania Supreme Court has accepted this interpretation of Section 705(a). *American Casualty Company v. PHICO Insurance Company,* 549 Pa. 682, 702 A.2d 1050 (1997).[7]

The CAT Fund submits that the HMC physicians, unlike the nurse in *American Casualty Company,* were separately covered for direct liability, and there is no reason why the CAT Fund should issue a second $1 million payment absent negligence on the part of HMC. It must be emphasized, however, that neither this Court[8] nor our Pennsylvania Supreme Court suggested that Section 705(a) was limited to vicarious liability cases involving a provider not covered by the CAT Fund.

As HMC highlighted, Section 705(a) does not specifically address the subordination of claims for vicarious liability. Further, HMC stresses that Act 111 makes no reference to treating vicarious liability claims differently than direct claims. We must agree with HMC that if the legislature intended that there be differential treatment between vicarious liability claims and direct liability claims, it would have provided a statutory directive.

For purposes of statutory interpretation, it is also necessary to address Section 701(d) which sets forth a limit of liability for various calendar years "for each occurrence for each health care provider." 40 P.S. § 1301.701(d). The CAT Fund asserts that if it were to pay on behalf of a vicariously liable HMC, it would be paying twice for the same health care provider, an absurd result. To the contrary, HMC responds that the CAT Fund is not paying twice but once for each covered provider. In essence, the CAT Fund ignores the allegation that each defendant paid for coverage and was allegedly entitled to protection. The allegations are that the CAT Fund was required to provide coverage for vicarious liability. Lastly, the CAT Fund

---

**7.** In *American Casualty Company,* a liability insurer brought a declaratory judgment action to determine the priority of three insurers on a medical malpractice claim that involved a nurse, not a "health care provider" entitled to additional coverage from the CAT Fund. The parents of a baby with severe brain damage alleged that the delivery room nurse negligently performed her duties. After comparing the policy limits approach and the equal shares approach, our Pennsylvania Supreme Court held that "the equal shares approach ... is the more equitable allocation method." *Id.* at 693, 702 A.2d at 1056. Pursuant to the equal shares method, each insurer matched payments in keeping with the limits of the lower policy, with the remaining loss paid from the larger policy up to its limits.

**8.** See *American Casualty Company,* 145 Pa. Cmwlth. 184, 602 A.2d 904 (1992) *rev'd* 537 Pa. 295, 643 A.2d 91 (1994) *on remand to* 661 A.2d 939 (Pa.Cmwlth.1995) *rev'd* 549 Pa. 682, 702 A.2d 1050 (1997). Throughout the course of these extensive proceedings, there had been no dispute as to the availability of additional coverage for vicarious claims.

asserts it must maintain fiscal integrity and decline payment based upon the hospital's vicarious liability until the physician's coverage is exhausted. Solvency is not the issue. The CAT Fund, depending upon its losses, has the authority to surcharge providers based on Section 701(e). 40 P.S. § 1301.701(e).

Next, the CAT Fund submits that common law indemnification principles support the CAT Fund's interpretation of Act 111. In particular, the CAT Fund notes that a vicariously liable employer has a right of indemnity against the negligent employee. *See Ragan v. Steen*, 229 Pa.Super. 515, 331 A.2d 724 (1974). The CAT Fund elaborates that if it pays based upon vicarious liability, it will be subrogated to HMC's rights and may recover from the physician provider. By waiting for the exhaustion of coverage, the CAT Fund avoids the extra step of contributing toward settlement and then seeking indemnification from the directly liable party.

HMC counters that the CAT Fund ignores the pivotal factor underlying indemnity and subrogation, i.e. paying the loss. In *Sirianni v. Nugent Bros., Inc.*, 509 Pa. 564, 571, 506 A.2d 868, 871 (1986), our Pennsylvania Supreme Court viewed indemnity as "a fault shifting mechanism, operable only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss." Here, the problem lies in the fact that the CAT Fund is attempting to assert a right to indemnity or subrogation before the loss has actually been incurred.

■ HMC properly relies upon the well-:tled rule that an insurer cannot recover against its insured by way of a subrogation claim. *Remy v. Michael D's Carpet Outlets*, 391 Pa.Super. 436, 571 A.2d 446, 452 (1990). When the insurer accepts the insured's premiums, the insurer is compensated for assuming risk. Furthermore, it serves a hospital's interests not to seek indemnity from its employees so that valu-

able employees remain, morale is preserved, and patient services are not disrupted. In summary, we overrule the CAT Fund's preliminary objection to Counts II, III, and IV of HMC's complaint.

**B.**

■ Secondly, the CAT Fund asserts that HMC failed to state a cause of action for estoppel in Count V which provides:

88. By failing to previously assert that it would subordinate claims of vicarious liability against covered health care providers, and by previously contributing to settlements on behalf of vicariously liable defendants, the CAT Fund should have reasonably expected that statutory insureds, such as HMC, would expect and rely upon the fact that coverage would be available for vicarious claims and would structure liability insurance arrangements accordingly.

. . . .

90. HMC further reasonably relied upon insurance coverage for vicarious claims by paying annual surcharges which, upon information and belief, included, as a component of their calculation, an aspect of the cost of insuring against vicarious claims.

Complaint, Paragraphs 88, 90 at 17.

The CAT Fund contends that its statutory duty is to evaluate how much the CAT Fund will pay to settle a claim, and estoppel is inappropriate. In *Department of Environmental Resources v. Philadelphia Suburban Water Company*, 135 Pa. Cmwlth. 283, 581 A.2d 984 (1990), this Court determined that the Department of Environmental Resources was not estopped from requiring subsidiary water permits even if it had not done so for a long time. *Id.* at 990. Nevertheless, HMC clarifies that it seeks to compel the CAT Fund to perform its statutory obligations connected with providing coverage for vicarious claims.

■ The CAT Fund's assertion that HMC failed to plead the requisite elements of estoppel lacks merit. The elements of estoppel against an agency include:

1) misleading words, conduct or silence by the party against whom the estoppel is asserted;

2) unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting estoppel; and

3) the lack of a duty to inquire on the party asserting the estoppel.

*Crozer Chester Medical Center v. Medical Professional Liability Catastrophe Loss Fund*, 713 A.2d 1196, 1202 (Pa.Cmwlth. 1998) *citing Chester Extended Care Center v. Department of Public Welfare*, 526 Pa. 350, 586 A.2d 379 (1991).

Here, the circumstances alleged, if believed, give rise to the reasonable conclusion that the CAT Fund engaged in misleading conduct upon which HMC relied. Substantiation is found in the complaint itself. "[P]rior to the notification to HMC in January, 1999, ... the CAT Fund has never notified HMC that it refused to pay claims for vicarious liability until such time as all available basic coverage and/or excess coverage ... was exhausted." Complaint, Paragraph 21 at 4. In addition, "HMC has reasonably and justifiably relied upon the existence of CAT Fund excess coverage for vicarious liability claims under Act 111." Complaint, Paragraph 27 at 5. We conclude that HMC has set forth a claim for relief based on estoppel, and the CAT Fund's preliminary objection to Count V is overruled.

## C.

■ The CAT Fund's third contention is that HMC failed to state a cause of action at Count VI for quasi contract. In Count VI, HMC alleges that "the CAT Fund was unjustly enriched by its receipt of the surcharges from HMC and by its retention of monies which it should rightfully have paid on behalf of HMC as settlement proceeds." Complaint, Paragraph 97 at 19.

■ In *Garofolo v. Department of Revenue*, 167 Pa.Cmwlth. 672, 648 A.2d 1329 (1994), this Court explained:

In the absence of fraud, coercion, or specific request, ... a governmental body is not unjustly enriched by benefits voluntarily conferred upon it, *except where the benefit was conferred under circumstances making such action necessary for the protection of its interests or the interests of a third person.*

*Id.* at 1334 *citing* Restatement, Restitution, § 112. (Emphasis added). Such circumstances have been alleged at Count VI.

The CAT Fund asserts that HMC's quasi contract claim is defective because the relationship between HMC and the CAT Fund is statutory, not contractual, therefore, it follows that the CAT Fund cannot be unjustly enriched where there is a statutory entitlement to surcharge payments. However, it is the CAT Fund's refusal to pay the coverage on behalf of HMC which triggered the asserted quasi contract. In *Meier*, this Court stated:

As in Ohio Casualty, where the Court determined that the Act afforded no procedure whereby an insurer could seek restitution for its discharge of an alleged statutory liability of the Fund, Petitioners [health care providers] here have no concrete statutorily prescribed procedure which they are required to follow when they feel that Respondents [Insurance Commissioner and Director of CAT Fund] have overcharged them or otherwise mismanaged CAT Fund accounts. Because the Act affords Petitioners no remedy in the circumstances of their complaint, Respondents cannot successfully argue that Petitioners have failed to exhaust their administrative remedies. Therefore, we overrule the third preliminary objection.

*Id.* at 603. Based on the foregoing, at this stage of the pleadings, a claim for restitution against the CAT Fund is feasible. We

overrule the CAT Fund's preliminary objection to Count VI.

### D.

■ Fourthly, the CAT Fund maintains that HMC failed to state a cause of action in Count VII for the denial of procedural and substantive due process. HMC alleges in Count VII that "[a]s a result of the CAT Fund's arbitrary and wrongful conduct, HMC has been denied property without due process of law." Complaint, Paragraph 102 at 20.

This Court has made the following observation regarding due process violations: "The requirements of procedural and substantive due process apply to the deprivation of a property or liberty interest. . . . In order to have a property interest, a litigant must have an enforceable expectation created either by statute or contract." *Pennsylvania Social Services Union v. Department of Public Welfare*, 699 A.2d 807, 812 (Pa.Cmwlth.1997) (citations omitted).

The CAT Fund contends that HMC's expectation of money from the CAT Fund does not constitute a property interest warranting the protection of procedural due process. Under these circumstances, it argues there is no need for HMC to receive notice and an opportunity to be heard. With respect to substantive due process, the CAT Fund submits that HMC did not establish a violation of a fundamental property right.

Nevertheless, HMC alleges legitimate concerns about a constitutionally protected property right stemming from its right to retain assets combined with its entitlement to coverage under Act 111. Additionally, HMC alleges that the CAT Fund's coverage denial was without notice or opportunity to be heard. *See* Complaint, Paragraph 109 at 21. HMC alleges sufficient facts to state a deprivation of procedural and substantive due process rights.

### E.

■ Next, the CAT Fund asserts that HMC failed to state a cause of action for the denial of equal protection rights in Count VII. HMC included a claim "for the violation of . . . equal protection rights under the Constitution of the Commonwealth of Pennsylvania." Complaint, Paragraph 113 at 21.

In *Social Services Union*, this Court conveyed that "[t]he essence of the equal protection clauses of the United States and Pennsylvania Constitutions is the requirement that similarly situated persons be treated alike." *Id.* at 812 *citing DeWees v. Stevenson*, 779 F.Supp. 25 (E.D.Pa.1991); *Bell Atlantic Mobile Systems, Inc. v. Zoning Hearing Board of Township of O'Hara*, 676 A.2d 1255 (Pa.Cmwlth.1996), *appeal granted in part*, 547 Pa. 458, 691 A.2d 458 (1997). (Footnote omitted).

The CAT Fund maintains that HMC did not allege that it was treated differently than other health care providers. HMC made no reference to discrimination by the CAT Fund. Regardless of the CAT Fund's argument, this is a "fact pleading" jurisdiction, and the plaintiff "is not required to specify the legal theory . . . underlying the complaint." *Heinly v. Commonwealth of Pennsylvania*, 153 Pa. Cmwlth. 599, 621 A.2d 1212, 1215 n. 5 (1993). For all of the foregoing reasons, we overrule the CAT Fund's preliminary objection to Count VII.

### F.

Finally, the CAT Fund contends that HMC failed to state a cause of action in Count VIII for bad faith. HMC requested "this Honorable Court to rule that the CAT Fund's wrongful refusal to pay settlement proceeds on behalf of HMC in the Obstetrical Malpractice Action and the Pediatric Cardiology Action settlements render it liable pursuant to the doctrine of bad faith failure or refusal to settle." Complaint, Paragraph 120 at 23.

In *Finkbiner v. Medical Professional Liability Catastrophe Loss Fund*, 119 Pa. Cmwlth. 243, 546 A.2d 1327 (1988), this Court determined that a patient could not recover from the CAT Fund for bad faith refusal to settle when there was no contractual relation between the CAT Fund and the injured physician. Despite the CAT Fund's reliance upon case law, HMC suggests that it is now appropriate to re-examine whether the CAT Fund should be accountable under statute or common law for bad faith. This claim is worth exploring in light of two noteworthy developments.

First, the legislature has authorized punitive damages against an insurer for bad faith in actions on insurance policies. *See* Section 8371(2) of the Judicial Code, 42 Pa.C.S. § 8371(2). Second, the Court's holding that the CAT Fund does not owe a fiduciary duty to a physician[9] "has no bearing on whether the Respondents [Insurance Commissioner and Director of CAT Fund] have a fiduciary duty to properly manage the CAT Fund and its income." *Meier*, 648 A.2d at 607 n. 22. These circumstances cast doubt over whether the law forecloses this claim. The CAT Fund's preliminary objection to Count VIII is overruled.

Accordingly, we dismiss all of the CAT Fund's preliminary objections and the CAT Fund is granted leave to file an answer to HMC's complaint/petition for review within 30 days.

### *O R D E R*

AND NOW, this 21st day of November, 2000, we dismiss all preliminary objections and the Pennsylvania Medical Professional Liability Catastrophe Loss Fund is granted leave to file an answer to the complaint/petition for review within 30 days.